| | |
|---|---|
| Dina E. Micheletti<br>**FAZIO \| MICHELETTI LLP**<br>2410 Camino Ramon, Suite 315<br>San Ramon, CA 94583<br>T: 925-543-2555<br>F: 925-369-0344 | Steve A. Miller<br>**STEVE A. MILLER, PC**<br>1625 Larimer Street, No. 2905<br>Denver, CO 80202<br>T: 303-892-9933<br>F: 303-892-8925 |
| Steven A. Schwartz (*pro hac vice*)<br>**CHIMICLES & TIKELLIS LLP**<br>361 W. Lancaster Avenue<br>Haverford, PA 19041<br>T: 610-642-8500<br>F: 610-649-3633 | *Counsel for Objector Kessinger* |

*Co-Lead Class Counsel*

Mark A. Chavez
**CHAVEZ & GERTLER LLP**
42 Miller Avenue
Mill Valley, CA 94941
Telephone: 415-381-5599
Facsimile: 315-381-5572

*Class Counsel*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE APPLE IPHONE/IPOD<br>WARRANTY LITIGATION<br><br>This Document Relates To:<br><br>All Actions | **No. CV-10-01610**<br>**JOINT LETTER REGARDING**<br>**DISCOVERY DISPUTE**<br>**(OBJECTOR KESSINGER'S**<br>**REQUEST TO DEPOSE CLASS**<br>**COUNSEL MARK A. CHAVEZ)**<br><br>Trial Date: None Set<br>Judge: Richard Seeborg<br>Mag. Judge: Donna M. Ryu |

H0032040.

January 6, 2014

The Honorable Donna M. Ryu
United States Magistrate Judge

    Re:    <u>*Apple IPhone/IPod Warranty Litigation*
               Case No. CV-10-01610</u>

Dear Judge Ryu:

       Pursuant to your Order dated December 30, 2013, the parties, through lead counsel, conducted a telephonic meet-and-confer session concerning their discovery disputes on January 1, 2014. This letter addresses the discovery dispute concerning the request, made by Mr. Kessinger after he was served with Plaintiffs' subpoena, to depose attorney Mark Chavez, one of the attorneys representing the class in this case, concerning his alleged relationships with each of the five (5) cy pres recipients proposed by class counsel and defendant Apple as recipients of the residual, if any, that may remain after distribution to the settlement class members of the $53 million settlement fund negotiated by class counsel in this case. Judge Seeborg preliminarily approved the settlement as well as the proposed cy pres recipients. Objector Kessinger contends Mr. Chavez has revealed that he has a business relationship and or has represented such entities some time in the past (Doc# 102, p. 4 & 7; Par. 6 & 13, Declaration of Mark Chavez; Objection of Mr. Kessinger).

      1.    <u>Right to Deposition.</u>  Plaintiffs and Objector Kessinger agree that objectors are not entitled to conduct any discovery and that Objector Kessinger must persuade the Court to exercise its discretion to allow the requested deposition.

      2.    <u>Standards for Exercise of Discretion.</u>

         a.    <u>Objector's Position.</u>  Objector Kessinger contends that the Court should follow the NACA Guidelines and permit the deposition.

         b.    <u>Plaintiffs' Position.</u>  "It is … all but unheard of to grant objectors the right to depose class counsel or the defense lawyers on the course of the negotiations…" Koniak and Cohen, *Under Cloak of Settlement*, 82 Va. L. Rev. 1051, 1009 (1996). *See also Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 620 (S.D. Cal. 2005) ("discovery of evidence pertaining to settlement negotiations [in class actions] is appropriate only in rare circumstances."). Objector Kessinger has failed to establish any of the unusual factors which might warrant such exceptional relief here.  "As a general principle, 'the courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered.' *See Newberg* § 11.51 at 158-159;" *Hemphill*, 225 F.R.D. at 621.  Accordingly, objectors may only take discovery from class counsel if they "lay a foundation by adducing from independent sources evidence that the settlement may be collusive." *Mars Steel Corp v. Continental Ill. Nat'l Bank & Trust* 834 F.2d 677, 684 (7th Cir. 1987), cited with approval by the Ninth Circuit in *Lobatz v. U.S. West Cellular of California Inc*., 222 F.3d 1142, 1148 (9th Cir. 2000) (denying discovery request) and in *Hemphill, supra,* at 621. Former Chief Judge Henderson followed  *Hemphill* and rejected objectors' discovery in *Jaffe v. Morgan Stanley*, 2008 WL 346417 (N.D.Cal 2008) stating that:

H0032037.                     H0032015.                   -1-

> [t]he district court's most important function in reviewing compromises of class actions is its consideration of the settlement terms …. It is, ultimately, in the settlement terms that the class representatives' judgment and the adequacy of their representation is either vindicated or found wanting. If the terms themselves are fair, reasonable and adequate, the district court may fairly assume that they were negotiated by competent and adequate counsel; in such cases, whether another team of negotiators might have accomplished a better settlement is a matter of conjecture and irrelevance.

*Jaffe* at *5 quoting *Hemphill* at 622 and *In Re Corrugated Container Antitrust Litig.* 647 F.2d 195, 212 (5th Cir. 1981). Accordingly, "[t]he criteria relevant to the Court's decision whether to permit Objectors to conduct discovery are 'the nature and amount of previous discovery, reasonable basis for evidentiary requests, and number and interests of objectors.'" *Hemphill* at 619.

       3.      Exercise of Discretion

          a.    Objector's Position. Mr. Kessinger believes the relationship Mr. Chavez has with these cy pres beneficiaries constitutes a conflict of interest. The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Ninth Circuit has indicated that "the proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 462 (9th Cir. 2000).*

Even if Mr. Chavez claims no actual conflict of interest exists, "The lack of a prohibition on the appearance of impropriety in the Rules of Professional Conduct does not alter the underlying principle that an attorney owes undivided loyalty to the client." *Apple Computer, Inc. v. Superior Court*, 126 Cal. App. 4th 1253, at 1273-1274 (Cal. App., 2005). Unidentified class members cannot waive a potential conflict of interest created by Mr. Chavez. *Cal Pak Delivery, Inc., v. United Parcel Service, Inc.*, 60 Cal. Rptr.2d 207, 213 (Cal. App. 1 Dist., 1997). The general rule in California courts is that "where an attorney violates his or her ethical duties to the client, the attorney is not entitled to a fee for his or her services. *Cal Pak Delivery, Inc.*, 60 Cal. Rptr2d at 215; *Goldstein v. Lees*, 46 Cal. App. 3d 614 (1975); *Asbestos Claims Facility v. Berry & Berry*, 219 Cal. App.3d 9, 26-27. A trial court finds no reasonable value of attorneys' services because conflict of interest renders the services valueless. *Day v. Rosenthal*, 170 Cal. App.3d 1125, 1162 (1985).

In this Court, "Simultaneous representation of clients with conflicting interests (and without written informed consent) is an automatic ethics violation in California and grounds for disqualification." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 967 (9th Cir., 2009). In the 9th Circuit, "The responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel." *Rodriguez*, 563 F.3d at 967; citing *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir. 1995) (quoting *Sullivan v. Chase Inv. Servs. Of Boston, Inc.*, 79 F.R.D. 246, 258 (N.D. Cal. 1978). Mr. Chavez's fiduciary duty is to the class as a whole and it includes reporting potential conflict issues." *Rodriguez*, 563 F.3d at 967.

Mr. Kessinger also believes that Mr. Chavez has a duty to properly disclose such relationship with the Court as set forth below, and that he has failed. The specific facts that support permitting such discovery by a non-party upon class counsel involve, but are not limited to the following facts involving each charity or cy pres beneficiary identified in this case giving rise to such conflict of interest, and which in turn give rise to the need to obtain discovery from Mr. Chavez:

National Association of Consumer Advocates ("NACA")

-"NACA", was founded and formed by Mr. Mark Chavez, according to his declaration filed with this Court.
-Mr. Chavez has represented NACA in the past, according to his Declaration filed with this Court.
-Mr. Chavez has served as NACA's co-chair and was a member of its Board of Directors for 8 years, according to his Declaration filed with this Court.
-NACA consists of approximately only 1500 attorneys across the United States.
-When you are searching for attorneys on the non-profit's website under the zip code for Mr. Chavez, his law firm pops up in a search for attorneys that offer services to consumers, sponsored and advertised by NACA.
- -In 2013, the NACA named Mr. Chavez and his law firm the "Consumer Attorney of the Year."
-NACA pushes its members to obtain cy pres donations on its behalf, opining that "There is agreement that it is the duty of class counsel to recommend cy pres recipients."

National Consumer Law Center ("NCLC")

-Mr. Chavez's bio appears on the NCLC website when you search his name, and the NCLC identifies him as a "Nationally recognized consumer law class action attorney", who is also identified as one of the NCLC's "experts."
-Mr. Chavez is identified by the NCLC as a member of its "Partners Council for Leadership for the NCLC" in the Fall of 2013.
-Mr. Chavez sits on the Board of Directors with the NCLC, according to his Declaration filed in this case.
-Mr. Chavez is identified by the NCLC as a "generous donor" for his contribution to the NCLC for an amount of money between $5,000 and $19,999, placing himself in the "Leadership Circle" of the NCLC.
- NCLC offers attorneys a "Consulting Service", where for a fee, the NCLC will engage in a host of activities supporting consumer litigation, including "drafting or reviewing of discovery and pleadings in all phases of litigation from the initial complaint to appellate briefs." This "Consulting Service" provides research support and consultation on legal issues and case strategy in class action litigation- for a price.
-If anyone perusing the NCLC website needs legal assistance, they are funneled over to the NACA, discussed above that Mr. Chavez controls.
-The NCLC touts that it is a frequent recipient of cy pres awards, claiming that it receives funds that can be distributed to "organizations that further the interests of the underlying class members", including law firms through its "Consulting Service".

Consumer Federation of America ("CFA")

-Mr. Chavez has represented the CFA in the past, according to his Declaration filed in this case.
-Membership is only open to "non-profit organizations that promote the consumer interest."

-However, the current President of CFA, Willard P. Ogburn, also happens to be the "Executive Director" of the National Consumer Law Center ("NCLC"), where Mr. Chavez sits on the NCLC's Board of Directors.

Consumer's Union

-Mr. Chavez has represented this entity in the past, according to his Declaration filed with this Court.

Center for Auto Safety

-According to Mr. Chavez's declaration, he has represented the Center for Auto Safety in the past.
-Mr. Chavez has also utilized the Center for Auto Safety's services when he needs the opinion of an expert witness that supports his clients' objections to class action settlements.
-Mr. Chavez's co-counsel, Fazio & Micheletti, LLP are identified and advertised on the non-profit's website as "Lawyers and Experts" in Northern California.

      b.    <u>Plaintiffs' Position</u>.  The Objector's demand to depose attorney Chavez should be denied because it is neither designed nor intended to result in the discovery of relevant information or to benefit class members. Rather, it is a thinly disguised campaign of retribution against Mr. Chavez and the Center for Auto Safety ("CAS') arising from a dispute between the parties in another, entirely unrelated class action (discussed below).

      In considering whether discovery is warranted, "[t]he fundamental question is whether the district judge has sufficient facts before him to intelligently approve or disapprove the settlement." *Hemphill,* 225 F.R.D. at 619.  Here, the record demonstrates that the $53 million non-reversionary settlement occurred after extensive discovery and six days of mediation at JAMS, and will provide eligible Settlement Class Members with a net payment that *exceeds* the average replacement cost for their Class Device. Professional Objector Kessinger is the only objector out of the hundreds of thousands of Settlement Class Members.[1] The class was represented by a diverse group of respected and experienced counsel, and there is no "independent evidence" of any potential collusion. Kessinger's arguments are based on a mischaracterization of the cy pres provisions and of Mr. Chavez's relationship to CAS. The Settlement does not create a cy pres fund or create a new cy pres organization; it does not guarantee any of the proposed recipients any payments; and it does not grant any of them priority. There will be a cy pres residual distribution only if "there is a balance remaining in the Net Settlement Fund after the Parties use their best efforts to fully compensate Settlement Class Members, [and] such balance shall be equally distributed cy pres at the conclusion of the claims administration process…." (Settlement Agmt. ¶ 18.)  Given the number of verified payments to Settlement Class members, the fund will be exhausted. *See, e.g*., Apple's Brief in Support of Settlement (Dkt. No. 96) at 18 ("While the settlement provides for cy pres distribution to approved non-profit organizations if the Settlement Fund is not exhausted, any such distribution is highly unlikely given the number of claims already validated."). Thus, the proposed discovery has nothing to do with, and will shed no light on the sole question properly before the Court, which is whether any, all or none of the proposed recipients have a sufficient nexus to the

---

[1] Three other "objections" were filed by non-Settlement Class Members.

litigation to satisfy the Ninth Circuit's test in *Dennis v. Kellogg Co.,* 697 F.3d 858 (9th Cir. 2012). At the Preliminary Approval hearing, Judge Seeborg specifically discussed *Kellogg*, asked Class Counsel about the CAS, and praised Class Counsel's papers as "very thorough, very well done and gave me… the information I needed…." Transcript, June 19, 2013 at 4-5, 14-15. Since Mr. Chavez's connections with each of the proposed cy pres recipients were properly disclosed to the Court as part of his resume submitted in support of Preliminary Approval (Exh. 6 to Micheletti Decl., Dkt. 76-6) and in Mr. Chavez's declaration in support of final approval and attorneys' fees (Dkt. No. 102, ¶¶ 6, 13), discovery is not necessary.

The request for the deposition, attempt to disqualify Mr. Chavez and attack on CAS are, instead, for the improper purpose of retribution and not to advance any interest of the class. Mr. Chavez represented two objectors to the *In Re Toyota* unintended acceleration class action settlement on a *pro bono* basis and filed a declaration from CAS in support of the objection. Objector Kessinger's lawyers and several other professional objectors also filed objections. After the objections were overruled and notices of appeal filed, the professional objectors organized a mediation with class counsel. CAS and Mr. Chavez refused to sign a proposed confidentiality agreement which would have barred disclosure of any payoffs received by the professional objectors and declined to attend the mediation. Although Objector Kessinger's lawyers reached a settlement at the mediation and dismissed their appeal (without obtaining *any* benefit for the settlement class), Mr. Chavez is informed and believes that their payment was coming out of the class counsel's fees and that the payment was delayed because of his unwillingness to participate in the mediation. Mr. Chavez, on the other hand, dismissed his appeal only after obtaining benefits for the settlement class, which are not subject to any confidentiality order. Unlike the professional objectors, however, neither CAS nor Mr. Chavez accepted fees in that case.

The information set forth by Objector Kessinger above not only disproves that the requested deposition is necessary or would be helpful to Judge Seeborg in connection with the Final Approval proceedings, but also demonstrates the utter lack of merit in his objections. His Objection (Dkt. No. 111) at page 11 falsely asserts: "Nor did Mr. Chavez disclose this business relationship [with the CAS] with the trial court…" In fact, Mr. Chavez's involvement in the public interest community and connections with each of the five consumer entities was disclosed in Mr. Chavez's declaration in support of Final Approval. *See* Dkt. No.102 at ¶¶ 6, 13. Kessinger made the false statements regarding non-disclosure in his Objection because neither he nor his counsel apparently bothered to read the approval papers before filing their Objection. Class Counsel pointed out in the December 27, 2013 meet and confer – much to the surprise of Kessinger's counsel – that such disclosure was made. And now Kessinger parrots the information already disclosed to the Court, and other information from the websites of Mr. Chavez and the proposed cy pres recipients, as evidence of non-disclosure justifying a deposition to engage in a fishing expedition. Indeed, Kessinger's Objection does not even discuss Mr. Chavez's relationship with organizations other than the CAS (besides falsely asserting that CAS has "first dibs" on any cy pres distribution). *See* Objection at 11. The requested discovery is an afterthought designed solely to harass Mr. Chavez and as leverage to seek an undeserved payoff.

Objector's purported summary of the standards for disqualification based on a conflict of interest is also incorrect. Cases granting motions to disqualify class counsel are few and far between, involving only the most patent and egregious abuses. *See, e.g., Cal Pak Delivery, Inc. v. United Parcel Service, Inc.*, 52 Cal.App.4th 1, 5-6 (1997) (disqualified attorney "admitted he

had offered to sell out his client and the class which the client was seeking to represent for a payment to himself personally of approximately $8 to $10 million dollars"). There is no California case in which an attorney has been disqualified solely based on an "appearance of impropriety" of the kind alleged here. *Gregori v.Bank of America,* 207 Cal.App.3d 291, 306 (1989). Rather, there must also be "a tangible dereliction" or "at least a reasonable possibility that some specifically identifiable impropriety did in fact occur." *Id.* at 308; *see also DCH Health Services Corp. v. Waite*, 95 Cal.App.4th 829, 833 (2002) ("an appearance of impropriety by itself does not support a lawyer's disqualification"); *cf. Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012) (fact that defendant's Director of Public Policy sat on the Board of the proposed cy pres recipient did not create an unacceptable conflict of interest).

There is no evidence whatsoever that Mr. Chavez has engaged in self-dealing or that his professional contacts with the prominent consumer advocacy organizations proposed to receive the residual settlement funds create any conflict with the class. Mr. Chavez did not initially recommend the CAS as a proposed cy pres recipient; the suggestion came from one of the Co-Lead Counsel. Moreover, the cy pres recipients were approved by court-appointed Co-Lead Counsel and State Liaison Counsel and Apple's outside and in-house counsel, and preliminarily approved by the Court. If the mere fact that one of the attorneys representing the class has (or has had) some type of non-paying professional relationship with a proposed cy pres recipient were, as Objector argues, sufficient to warrant their disqualification, it would stand the cy pres procedures on their head. It is only natural for counsel to propose organizations with which they have some familiarity, who work on common issues, and who counsel trusts to properly apply residual settlement funds. A contrary rule would limit cy pres recipients to obscure organizations with little or no track record of serving consumers or other class members. Where, as here, there is no evidence of any financial or self-dealing relationship between class counsel and a proposed cy pres recipient, the interests of justice are not served by subjecting plaintiffs' attorneys to invasive depositions, and there is no authority to the contrary. More important, Class Counsel provided Judge Seeborg with more than sufficient information for him to evaluate any relevant issues and ask any questions in connection with Final Approval proceedings to assess the Settlement.

4. <u>Length of Any Deposition.</u> The parties agree that if the Court orders the deposition it should be limited to four hours.

| | |
|---|---|
| */s/ Steven A. Schwartz* | */s/ Steven A. Miller* |
| */s/ Dina Micheletti* | Counsel for Objector Kessinger |
| <u>Co-Lead Class Counsel</u> | |
| */s/ Mark A. Chavez* | |
| Class Counsel | |