1  Jeffrey L. Fazio (146043) (jlf@fazmiclaw.com)
   Dina E. Micheletti (184141) (dem@fazmiclaw.com)
2  **FAZIO | MICHELETTI LLP**
   2410 Camino Ramon, Suite 315
3  San Ramon, CA  94583
   T:   925-543-2555
4  F:   925-369-0344

5  Steven A. Schwartz (*pro hac vice*) (sas@chimicles.com)
   Timothy N. Mathews (*pro hac vice*) (tnm@chimicles.com)
6  **CHIMICLES & TIKELLIS LLP**
   361 W. Lancaster Avenue
7  Haverford, PA  19041
   T:  610-642-8500
8  F:  610-649-3633

9  *Co-Lead Class Counsel*

10  Anthony F. Fata (*pro hac vice pending*)
    Daniel O. Herrera (*pro hac vice pending*)
11  **CAFFERTY CLOBES MERIWETHER
    & SPRENGEL LLP**
12  30 N. LaSalle, Suite 3200
    Chicago, IL 60602
13  T: 312-782-4880
    F: 312-782-4485
14
    *State Plaintiffs Liaison Counsel*
15  (Additional Counsel Listed at End of Document)

16

17                **UNITED STATES DISTRICT COURT**

18                **NORTHERN DISTRICT OF CALIFORNIA**

19  IN RE APPLE IPHONE/IPOD WARRANTY         **No. 10-CV-01610**
    LITIGATION
20                                            **PLAINTIFFS' RESPONSE TO**
    This Document Relates to All Actions      **OBJECTIONS TO SETTLEMENT AND**
21                                            **SETTLEMENT ADMINISTRATION**
                                              **UPDATE**
22
23                                            DATE:  January 29, 2014
                                              TIME:   1:30 p.m.
24                                            COURTROOM:  3

25                                            **Hon. Richard G. Seeborg**

26

27

28

H0032510.

**TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................... 1

II.     ARGUMENT ............................................................................................ 3

        A.      The Universally Positive Reaction of Settlement Class Members Favors Final Approval ............................................................................. 3

        B.      Class Counsel's Efforts on Behalf of the Settlement Class Continue to This Day and Their Exemplary Work is Reflected in the Number of People who Stand to Benefit from this Settlement ................................. 3

        C.      Non-Settlement Class Member Claudio Martino Withdrew his Objection, Which was Groundless in Any Event ................................... 5

        D.      Kessinger's Withdrawn Objections, Which Included Unfounded Attacks on CAS and Class Counsel that Were raised for an Improper Purpose, Are Meritless................................................................................. 6

                1.      Kessinger Mischaracterizes the *Cy Pres* Provisions of the Settlement Agreement................................................................. 7

                2.      CAS Is An Appropriate Recipient of Residual Funds ............................. 8

                3.      There is No Basis for the "Conflict" Accusations Against Chavez.......... 9

        E.      The Court Should Strike Casey's Objection to the Settlement And Overrule Any Objections Stated Therein............................................. 11

                1.      Objector Casey Is Not a Settlement Class Member, So He Has No Standing to Object to the Settlement ....................................... 11

                2.      Casey Ignored the Court's Order that he Provide Information Concerning, *inter alia*, Class Membership ............................. 12

                3.      Casey's Objections Lack Merit............................................................... 14

III.    CONCLUSION........................................................................................ 15

H0032510.

1

## <u>TABLE OF AUTHORITIES</u>

2

3

### <u>*Cases*</u>

4  *Brooks v. Gomez*, 2013 WL 496339, *7 (N.D. Cal. Feb. 7, 2013) .................................. 14, 15

5  *Browning v. Yahoo! Inc.*, 2007 U.S. Dist. LEXIS 86266 (N.D. Cal. Nov. 16, 2007) ................ 5

6  *Cal Pak Delivery, Inc. v. United Parcel Service, Inc.,* 52 Cal. App. 4th 1, 5-6 (1997) ............ 11

7  *City of Santa Barbara v. Superior Court,* 122 Cal. App. 4th 17, 23 (2004) .......................... 11

8  *Cohorst v. BRE Props.*, 2011 U.S. Dist. LEXIS 151719 (S.D. Cal. Nov. 9, 2011) .................. 5

9  *Gregori v. Bank of America*, 207 Cal. App. 3d 291 (1989).......................................... 11

10  *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 622 (S.D. Cal. 2005) ....... 9, 10

11  *In re Apple Inc. Sec. Litig.*, 2011 WL 1877988, *3 n. 4 (N.D. Cal., May 17, 2011) .............. 13

12  *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531, 532 (N.D. Cal. 2012) .......... 13

13  *In re Corrugated Container Antitrust Litig.* 643 F.2d 195, 212 (5th Cir. 1981) ...................... 9

14  *In re Hydroxycut Marketing and Sales Practices Litig.*, 2013 WL 5275618, *2 (S.D. Cal. Sept. 17, 2013)............................................................................................ 12

15  *Jaffe v. Morgan Stanley*, 2008 WL 346417, *4 (N.D. Cal. 2008) ............................................ 9

16  *Lane v. Facebook, Inc.*, 696 F.3d 811, 821 (9th Cir. 2012)................................................ 5, 11

17  *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977).................................. 3

18  *National Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)..... 3

19  *San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1032 (N.D. Cal. 1999) ............................................................................................... 12

20  *Sanders v. City of Los Angeles*, 3 Cal. 3d 252, 263 (1970) ................................................ 12

21  *Walker v. Pac. Mar. Assoc.*, 2008 WL 1734757, *2 & n.2 (N.D. Cal. Apr. 14, 2008) ............ 15

22

23

### <u>*Secondary Authorities*</u>

24  A. Conte and H. Newberg,
       Newberg on Class Actions (4th Ed. 2002)................................................ 10

25

26

27

28

H0032510.

## I.     INTRODUCTION

Plaintiffs submit this memorandum to (1) advise the Court of the overwhelmingly positive reaction of the Settlement Class to this Settlement; (2) update the Court on Settlement Administration matters, including claims statistics; (3) respond to certain issues raised by Jeffrey Scott Kessinger, Esq., the only Settlement Class Member to object to the Settlement (who has since withdrawn his objections); (4) address a notice issue raised by non-Settlement Class Member Claudio Martino (who has also withdrawn his objection); and (5) report on the status of non-Settlement Class Member Michael Casey's contempt of Magistrate Judge Ryu's Order requiring him to appear for deposition, as well as his refusal to withdraw his objection (which he has no standing to raise).

To date, the Settlement Administrator has approved for payment: (a) 136,660 Class Devices owned by Direct-Payment Settlement Class Members; and (b) an additional 25,315 Class Devices owned by Claims-Made Settlement Class Members.  Out of all these Settlement Class Members, just *one*—Jeffrey Scott Kessinger—objected to this $53 million Settlement.  Mr. Kessinger has a history of objecting to class-action settlements, both as a professional objector (as in this case) and as an attorney who represents professional objectors—frequently with the lawyers who are representing him here.  True to form, within minutes after Magistrate Judge Ryu granted Class Counsel's motion to compel Mr. Kessinger to testify at deposition and to produce the documents Class Counsel sought, his attorney proposed to withdraw the objections in exchange for foregoing that discovery.

Mr. Kessinger's objections reflect his failure to read the Settlement Agreement, and are therefore devoid of legal and factual support.  But his failure to read the Settlement Agreement cannot excuse the gross misrepresentations he made about the Settlement's residual *cy pres* component or the defamatory statements he made about Class Counsel Mark Chavez and proposed *cy pres* recipient Center for Auto Safety ("CAS"), which cannot be allowed to stand without a response.

It is not surprising that no legitimate Settlement Class Member objects to this Settlement; Class Counsel put a great deal of effort into crafting an agreement that would inspire enthusiasm,

1  not complaints, and they succeeded:  Settlement Class Members are receiving *more* than 100%

2  of the reimbursement amounts provided by the Settlement Agreement.

3  Besides Mr. Kessinger, only two other individuals—Claudio Martino and Michael

4  Casey—purported to file objections.[1]  But neither Mr. Martino nor Mr. Casey is a Settlement

5  Class Member, thus neither has standing to object.

6  To his credit, Mr. Martino withdrew his objection after being shown evidence that his

7  iPhone was out of warranty when he presented it to Apple for repair in 2009, which meant he

8  was not a Settlement Class Member.  Nonetheless, Class Counsel address the substance of Mr.

9  Martino's complaint below, so as to allay any potential concerns the Court may have.

10  Mr. Casey, by contrast, has pressed on, not only refusing to withdraw his objection after

11  being shown evidence that proves he is not a Settlement Class Member (Apple's records show

12  that the device for which he submitted a claim was actually replaced for free by Apple under

13  warranty), but also flagrantly ignoring Magistrate Judge Ryu's order to appear for deposition and

14  produce the documents Class Counsel described in their subpoena.

15  It appears that Mr. Casey is serving as a proxy for a lawyer who routinely represents

16  professional objectors, as a means of enabling the attorney to elude detection in the Northern

17  District just long enough to delay distribution to Settlement Class Members by filing a frivolous

18  appeal and demanding a cash payment in exchange for his agreement to dismiss the appeal.

19  Class Counsel intend to pursue all available remedies against Mr. Casey for his conduct in this

20  case, including an appeal bond should he file a frivolous appeal and sanctions for blatantly and

21  willfully wasting the time and resources of all concerned.

---

26  [1] A third individual, Mark D. Bradshaw, served a letter requesting that the Court extend
the class period.  *See* Dkt. No. 93.  Mr. Bradshaw admits in his letter, however, that he is not a
27  Settlement Class Member because he was denied coverage outside the Class Period, and he does
not object to the Settlement. As noted in Plaintiffs' Motion for Final Approval, the Settlement
28  does not release his claims.  *See* Dkt. No. 97, at 28.

**PLAINTIFFS' RESPONSE TO OBJS. TO SETTLEMENT & SETTLEMENT ADMIN. UPDATE**
(CASE NO. 10-CV-01610)

## II.    ARGUMENT

### A.    THE UNIVERSALLY POSITIVE REACTION OF SETTLEMENT CLASS MEMBERS FAVORS FINAL APPROVAL

The Settlement Class's overwhelmingly positive response to this Settlement is perhaps the best testament to its success.  *See, e.g., Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977) (absence of large number of objections to settlement "indicates its acceptability"); *National Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (same).  As mentioned above, the lone objection filed by a Settlement Class Member was made by a professional objector who abandoned it immediately after he was ordered to appear for deposition.  Moreover, the Settlement Administrator received just 40 purported opt-out requests, however, of those, *17* were submitted by people who simply wanted to inform the Settlement Administrator that Apple had not denied their warranty claims due to liquid damage, thus they were never Settlement Class Members in the first place.  *See* Supplemental Declaration of Patrick Passarella of KCC, filed concurrently herewith ("Passarella Supp. Decl."), ¶ 18 & Exs. B, C.  These numbers speak volumes about the support this Settlement enjoys, and they favor final approval.

### B.    CLASS COUNSEL'S EFFORTS ON BEHALF OF THE SETTLEMENT CLASS CONTINUE TO THIS DAY AND THEIR EXEMPLARY WORK IS REFLECTED IN THE NUMBER OF PEOPLE WHO STAND TO BENEFIT FROM THIS SETTLEMENT

Class Counsel are not surprised that this Settlement has been enthusiastically received by Settlement Class Members.  Class Counsel put a tremendous effort into laying the groundwork necessary to achieve this result and they negotiated an agreement from Apple that eclipses what other counsel have been able to obtain from this defendant.  Their efforts on behalf of the Settlement Class continue to this day.   At Class Counsel's insistence and direction, the Settlement Administrator has conducted additional searches for contact information and sent over one hundred thousand reminder emails in a further attempt to identify more Direct Payment-Settlement Class Members and encourage existing Direct-Payment Settlement Class Members to update or confirm their postal addresses.  Passarella Supp. Decl. ¶¶ 6-8. These efforts are in addition to the prior extensive notice efforts described in Mr. Passarella's initial

-3-

1   declaration.  *See* Dkt. No. 99.  As a result of all these efforts, to date the Settlement

2   Administrator has identified 136,606 Class Devices owned by Direct Payment Class Members

3   for whom the Settlement Administrator has identified at least one valid mailing address.[2]

4   Passarella Supp. Decl. ¶ 12.  The actual dollar value of these claims is  $27,972,485.  *Id*., ¶ 13.

5          The Settlement Administrator, with input from Class Counsel and Apple, also developed

6   and finalized specific scoring rules to evaluate claims submitted by potential Claims-Made

7   Settlement Class Members. *Id*., ¶ 10. To date, the Settlement Administrator has approved

8   approximately 25,315 claims submitted by Claims-Made Settlement Class Members. *Id*., ¶ 15.

9   The actual value of these claims is $5,293,490 *Id*., ¶ 15.

10         Thus, to date, the Settlement Administrator has approved for payment 161,975 Class

11  Devices owned by Direct-Payment and Claims-Made Settlement Class Members, with an actual

12  dollar value of $33,265,975.  *Id*., ¶¶ 13, 15.

13         Accordingly, the $53 million Settlement represents a gross recovery of approximately

14  **159%** of the aggregate average replacement cost of the 161,975 Class Devices owned by these

15  Settlement Class Members. Even if the Court awards the full 30% fee and expense

16  reimbursement request of Class Counsel, the Net Settlement Fund would be large enough to pay

17  these Settlement Class Members an average of approximately $229 per device, which represents

18  approximately **112%** of the average aggregate amounts Settlement Class Members paid to Apple

19  to replace Class Devices.[3]  Under any analysis, this updated information provides strong support

20  for approval of both the Settlement and Fee request.

21

22

23
_____

24      [2] Thus, KCC has found postal addresses representing approximately 90% of all Class
    Devices owned by potential Direct-Payment Settlement Class Members. *Id*., ¶¶12, 14

25      [3] KCC has sent out deficiency notices with respect to claim submissions that did not meet

26  the criteria for payment, and is in the process of evaluating any responses.  Even if all
    potentially-deficient claims were ultimately approved (***which is highly unlikely***), the $53 million

27  Settlement would still represent an approximate 144% gross recovery and 101% net recovery of
    the average replacement cost of the Class Devices of all the Settlement Class Members

28  potentially eligible for payment pursuant to the Settlement Agreement.  *Id*. ¶¶ 11, 13, 15.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## C.   NON-SETTLEMENT CLASS MEMBER CLAUDIO MARTINO WITHDREW HIS OBJECTION, WHICH WAS GROUNDLESS IN ANY EVENT

Claudio Martino is not a Settlement Class Member because, according to Apple's records, Mr. Martino's iPhone was not under warranty at the time he brought it to the Apple store for warranty repair.  Thus, Mr. Martino had no standing to assert an objection.  When provided these facts, Mr. Martino voluntarily withdrew his objection.  *See* Dkt. No. 117.

Mr. Martino's withdrawn objection had been made on the ground that he found the emailed Notice in his junk folder, which he did not review until "early in November," after the deadline for submitting claims had expired.  *See* Dkt. No. 109.  Notwithstanding Mr. Martino's lack of standing, this objection is groundless on the merits for several reasons.

First, Courts routinely approve email notice campaigns and, inevitably, some email messages will be sent to a spam folder—just as some postal mail will never reach its intended recipient.  Courts have consistently overruled objections based on this fact.  *See e.g.*, *Cohorst v. BRE Props.*, 2011 U.S. Dist. LEXIS 151719 (S.D. Cal. Nov. 9, 2011) (rejecting objection that class notice was found in a spam folder); *Lane v. Facebook, Inc.*, 2010 U.S. Dist. LEXIS 24762 (N.D. Cal. Mar. 17, 2010) (same); *Browning v. Yahoo! Inc.*, 2007 U.S. Dist. LEXIS 86266 (N.D. Cal. Nov. 16, 2007) (rejecting objection that some class members may have believed emailed notice was a "phishing" scam).

Second, as explained more fully in the Motion for Final Approval and related declarations, Class Counsel, Apple's Counsel, and KCC used extensive efforts to increase the likelihood that emailed notices would be received and read, including drafting Notices in a manner that would minimize the likelihood of their being considered spam or phishing; sending two rounds of Notice by e-mail, post card notice, and email reminder notices to Direct-Payment Settlement Class Members; and publishing notice in *MacWorld* and *USA Today* as a backup.[4]

Third, Mr. Martino does not dispute that he actually received an emailed Notice, which was sent to his Hotmail account on September 26, 2013.  Mr. Martino would have seen the

---

[4] In addition, the Settlement garnered significant press coverage.  *See* Passarella Decl., Dkt. No. 99, ¶ 44.

1  notice if he simply had checked his junk folder.  Indeed, when a user sets up a Hotmail account,

2  Microsoft states, "**Note:** You should occasionally check your junk email folder to make sure that

3  good messages don't get put there by mistake."  *See* Declaration of Anthony Fata in Response to

4  Objections, filed concurrently herewith, ¶ 32 & Ex. 31.  Accordingly, even if Mr. Martino were a

5  Settlement Class Member and had not already voluntarily withdrawn his objection, his narrow

6  complaint raises no impediment to granting Final Approval of the Settlement.

7        D.    **KESSINGER'S WITHDRAWN OBJECTIONS, WHICH INCLUDED UNFOUNDED
             ATTACKS ON CAS AND CLASS COUNSEL THAT WERE RAISED FOR AN IMPROPER
8            PURPOSE, ARE MERITLESS**

9        Professional Objector Jeffrey Scott Kessinger filed a motion to withdraw his objection

10  after Magistrate Judge Ryu ordered him to appear for a deposition and produce documents, Dkt.

11  Nos. 126 and 128.  As a result, his objection is no longer pending before the Court and may be

12  properly disregarded.  Nevertheless, the mischaracterizations of the Settlement Agreement's *cy*

13  *pres* provisions, as well as the accusations made by Mr. Kessinger against proposed *cy pres*

14  recipient Center for Auto Safety ("CAS") and Class Counsel Chavez & Gertler warrant a

15  response.

16        Mr. Kessinger's efforts to eliminate CAS as a potential recipient of *cy pres* funds by

17  casting doubt on CAS's integrity (Jeffrey Scott Kessinger's Objections, Dkt. No. 111 ("Obj.") at

18  6) and to prevent Chavez & Gertler from recovering any award of attorneys' fees for its work on

19  behalf of the class due to an imaginary conflict of interest regarding the nomination of CAS as

20  proposed *cy pres* recipient (Obj. at 11) are groundless, and were not raised to protect or advance

21  the interests of absent class members.  As explained in detail below, as well as in the

22  accompanying declarations of CAS Executive Director Clarence Ditlow ("Ditlow Decl.") and

23  Class Counsel Mark Chavez ("Chavez Decl."), had Mr. Kessinger not withdrawn these

24  accusations, his objections should have been rejected on the grounds that Mr. Kessinger failed to

25  offer a single viable fact or legal argument to support his accusations or to justify the

26  disqualification of counsel as he requests.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

> ### 1. Kessinger Mischaracterizes the *Cy Pres* Provisions of the Settlement Agreement

Mr. Kessinger's conflict-of-interest accusations are based on mischaracterizations of the *cy pres* provisions of the Settlement Agreement.  The settlement agreement does *not* establish a settlement fund for benefit of class members and a separate *cy pres* fund for the benefit of CAS, as Mr. Kessinger contends.  *See*, *e.g.*, Obj. at 5.  *None* of the $53 million settlement has been set aside for CAS or any other public-interest organization.   There will be a *cy pres* residual distribution only if "there is a balance remaining in the Net Settlement Fund after the Parties use their best efforts to fully compensate Settlement Class Members, [and] such balance shall be equally distributed *cy pres* at the conclusion of the claims administration process…." Settlement Agmt. ¶ 18.  Given the number of verified payments to Settlement Class members, it is probable that distributions to *cy pres* recipients, if any, will be minimal.  *See*, *e.g.*, Passarella Supp. Decl., ¶¶ 13, 15; Apple's Brief in Support of Settlement, Dkt. No. 96, at 18 ("While the settlement provides for *cy pres* distribution to approved non-profit organizations if the Settlement Fund is not exhausted, any such distribution is highly unlikely given the number of claims already validated").

Based on his misunderstanding of the *cy pres* provisions, Kessinger also argues that Class Counsel's fee request of 30% should  be denied unless "the benefits that Class Counsel allege are available to all class members are actually received, and not calculated based upon the cy pres component."  Obj. at 15.  As explained above and in the Supplemental Declaration of Patrick Passarella, there is no separate "*cy pres* component" to this settlement, as Kessinger.  Checks will be mailed to Settlement Class Members representing approximately **112%** of average aggregate losses—even if the requested 30% fee is awarded.  Only in the unlikely event of a residual would any part of the Settlement Fund go to any of the proposed *cy pres* recipients.  Under such circumstances, and as explained in more detail in the briefing on the fee motion, the proposed award of 30% of the Fund is reasonable and appropriate.

1

## 2.    CAS Is An Appropriate Recipient of Residual Funds

2          As the iPod's inventor, former Apple vice president Tony Fadell, has observed, the

3   automobile is the most fertile area for the development of automotive electronics, which is why it

4   is difficult to find a new car, truck, or SUV that does not integrate the iPhone and/or the iPod

5   into its audio system.   Ditlow Decl. ¶ 28; *see also* http://www.apple.com/ipod/car-integration/

6   (noting that the iPhone and iPod are integrated into virtually every major auto manufacturers'

7   vehicles, from the Mini to the Rolls Royce).   The extraordinary demand for telematics in motor

8   vehicles is also the reason that Apple and Google are competing for dominance in the automotive

9   area:   *Google, Apple to battle over smart cars at CES,* Wall Street Journal (Dec. 30, 2013)

10  (available   online   at   http://www.foxnews.com/tech/2013/12/30/google-apple-to-battle-over-

11  smart-cars-at-ces/) (noting that "[t]he car is the ultimate mobile device").   *See* Ditlow Decl. ¶ 28.

12         Having had extensive experience with promoting the enactment of state and federal

13  warranty laws and having promoted and advocated on behalf of individual and groups of

14  consumers—by working with state and federal regulators and by supporting class-action

15  litigation—in connection with the automotive industry and well beyond it, CAS is uniquely

16  situated to help consumers with problems of the sort that led to this litigation:   bad-faith

17  breaches of warranty and fraud related to the use of the iPhone, the iPod, and other mobile

18  devices.  *Id.* ¶¶ 6-10.

19         More specifically, based on CAS's experience with automakers providing separate

20  warranties for products like tires and batteries that are installed on new motor vehicles, CAS

21  anticipates that automakers will also provide separate warranties for the consumer electronics

22  that they install in new vehicles.  *Id.* ¶ 30.  CAS has seen and fought numerous attempts to limit

23  warranty coverage based on consumer abuse and improper maintenance that can be expected to

24  occur with automotive electronics, such as brakes and clutches—and even engines—that are

25  subject to wear.  *Id.*  With additional funding, CAS would expand its work in the growing area

26  of automotive electronics to obtain better, more comprehensive warranty coverage, to prevent

27  abuses by warranty providers, and to bring such unfair and deceptive practices to the attention

28  of federal regulatory agencies, such as NHTSA and the FTC.  *Id.*

1  CAS is not funded, and has never been funded, by any special-interest group. *See id.* ¶¶

2  9, 13, 26 & n.1.  Over the past four decades, CAS has developed a long track record of

3  successfully helping consumers solve their problems with some of the largest corporate entities

4  in the world, and it has done so with the support of donations and contributions, primarily from

5  individuals.  An award of *cy pres* funds would enable CAS to continue that work by conducting

6  the project described above, which would marshal CAS's extensive experience with warranty-

7  related issues to help consumers with difficulties relating to the electronics in their motor

8  vehicles. *Id.* ¶¶ 28-30.

9  **3.    There is No Basis for the "Conflict" Accusations Against Chavez**

10  The assertion that Chavez & Gertler "is beholden to the interests of" CAS for assistance

11  provided to the firm in connection with the *In Re Toyota Motor Corp.* case (Obj. at 11) is

12  demonstrably false.  Chavez Decl. ¶¶ 3-7; Ditlow Decl. ¶¶ 11-25;.  Chavez & Gertler provided

13  only *pro bono* representation to two objectors in the *In Re Toyota Motor Corp.* case at the

14  request of CAS, not vice versa (Chavez Decl. ¶¶3-7; Ditlow Decl. ¶¶ 15-25), and it did so after

15  all material aspects of the settlement in this action, including the proposed *cy pres* recipients, had

16  been agreed to. *See* Chavez Decl. ¶3.  Mr. Kessinger's attack on Chavez & Gertler boils down to

17  its baseless assertion that the firm cannot "prosecute the action vigorously on behalf of the

18  class," because it has ostensibly arranged for the CAS to have "'first dibs' on any remaining Net

19  Settlement Proceeds that are not paid out to Class Members." Obj. at 11. The purported

20  "arrangement," however, does not and could not exist under the settlement terms.

21  If the terms of a settlement are "fair, reasonable and adequate," as they indisputably are

22  here, "the district court may fairly assume that they were negotiated by competent and adequate

23  counsel." *Jaffe v. Morgan Stanley*, 2008 WL 346417, *4 (N.D. Cal. 2008) (quoting *Hemphill v.*

24  *San Diego Ass'n of Realtors, Inc*., 225 F.R.D. 616, 622 (S.D. Cal. 2005); *In re Corrugated*

25  *Container Antitrust Litig.* 643 F.2d 195, 212 (5th Cir. 1981)).  The settlement secured by all

26  Class Counsel here constitutes an excellent result for the class.  The class was represented by a

27  diverse group of respected and experienced counsel, and there is absolutely no evidence of any

28  potential collusion between *any* Class Counsel and *any* of the proposed *cy pres* recipients.

-9-

1    Mr. Kessinger's objection is a thinly-disguised attempt to retaliate against CAS and

2  Chavez & Gertler for refusing to keep secret and delaying a payoff to his attorneys in an entirely

3  unrelated class action.  The purpose of the objection is betrayed by its targeted focus on Chavez

4  & Gertler, even though, as set forth in the prior Declaration of Jeffrey Fazio (Dkt. No. 103, ¶¶

5  188-189), Mr. Chavez did not actually propose CAS as a *cy pres* recipient in this case (nor did he

6  propose any other *cy pres* recipient for that matter, although each was approved by all Class

7  Counsel and by Apple) and each Class Counsel fully disclosed its affiliations with those entities

8  in their respective declarations.  Put simply, the alleged financial relationship between CAS and

9  Chavez & Gertler is a figment of Mr. Kessinger's imagination.  Moreover, as Mr. Ditlow

10  explains in his declaration, CAS has never received attorneys' fees in the class actions in which

11  it has been involved, CAS has never sought or received a *cy pres* remedy in any class action in

12  which it has been involved (Ditlow Decl.¶ 9), and CAS is well-qualified to receive a share of any

13  residual funds in this matter, *see generally id.*; *see also* Section D.2, *supra*.

14    If the mere fact that one of the attorneys representing the class has (or has had) some type

15  of non-paying professional relationship with a proposed *cy pres* recipient were, as Kessinger

16  suggests, sufficient to warrant his or her disqualification, it would stand the *cy pres* procedures

17  on their head.  It is sound practice for counsel to propose, when possible, organizations with

18  which they have familiarity, work on common issues, and whom counsel trusts to properly apply

19  residual settlement funds.  A rule precluding experienced consumer lawyers from proposing *cy

20  pres* recipients with demonstrable track records and with whom they have worked in various

21  capacities would require counsel to gamble with *cy pres* funds.  Where, as here, there is

22  absolutely no financial or self-dealing relationship between any Class Counsel and any

23  proposed *cy pres* recipient, the interests of justice would not be served by disqualifying Class

24  Counsel.  "As a general principle, 'the courts respect the integrity of counsel and presume the

25  absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is

26  offered.'"  *Hemphill*, 225 F.R.D. at 621 (quoting A. Conte and H. Newberg, *Newberg on Class

27  Actions* § 11.51 at 158-59 (4th ed. 2002)).

28

1    Courts view motions to disqualify counsel with great disfavor, recognizing such motions

2  "are especially prone to tactical abuse because disqualification imposes heavy burdens on both

3  the clients and courts:  clients are deprived of their chosen counsel, litigation costs inevitably

4  increase and delays inevitably occur."  *City of Santa Barbara v. Superior Court,* 122 Cal. App.

5  4th 17, 23 (2004) (footnote omitted).  Not surprisingly, motions to disqualify are rarely granted

6  and only in cases involving only the most patent and egregious abuses.  *See*, *e.g.*, *Cal Pak*

7  *Delivery, Inc. v. United Parcel Service, Inc.,* 52 Cal. App. 4th 1, 5-6 (1997) (disqualified attorney

8  "admitted he had offered to sell out his client and the class which the client was seeking to

9  represent for a payment to himself personally of approximately $8 to $10 million dollars").  This

10  case does not involve an "appearance of impropriety," let alone a "tangible dereliction" of the

11  kind necessary to even potentially justify disqualification.  *Gregori v. Bank of America*, 207 Cal.

12  App. 3d 291 (1989); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 821 (9th Cir. 2012) (fact that

13  defendant's Director of Public Policy sat on Board of newly-created *cy pres* recipient did not

14  create an unacceptable conflict of interest).  Mr. Kessinger's accusations against Mr. Chavez and

15  his law firm concerning their supposed inappropriate relationship with CAS are unsupported by

16  the evidence, and do not justify the extreme sanction of disqualification.

17    **E.    THE COURT SHOULD STRIKE CASEY'S OBJECTION TO THE SETTLEMENT AND OVERRULE ANY OBJECTIONS STATED THEREIN**

18

19    **1.    Objector Casey Is Not a Settlement Class Member, So He Has No Standing to Object to the Settlement**

20    The Settlement Class is limited to people who own a Class Device that was tendered to

21  Apple for which "(c) repair or replacement … <u>was denied</u> by Apple on the basis of Apple's

22  Former Liquid Damage Policy." *See* Settlement Agmt., ¶1(JJ) (underlining added).  Objector

23  Michael Casey is not a Settlement Class Member because Apple replaced the device Mr. Casey

24  listed on his claim form for free, thus he was not denied warranty coverage based on Apple's

25  Former Liquid Damage Policy (or otherwise).  Specifically, Mr. Casey submitted a claim in this

26  case for an iPod touch bearing serial number 9C822T4U14N.  Passarella Supp. Decl. ¶ 5;

27  Declaration of Tim O'Neil in Support of Apple's Response to Objections to Proposed

28  Settlement, Dock. No. 139, ¶ 2 ("O'Neil Decl.").  According to KCC and Apple's records, on

-11-

1   April 1, 2009, "Jill Casey" visited the Apple store in Madison, Wisconsin. Apple provided Jill

2   Casey a free replacement under warranty pursuant to the AppleCare plan.  *See* O'Neil Decl. ¶ 2,

3   Exs. A, B.

4        Rule 23 grants "class members" the right to object to settlements. *See* Fed. R. Civ. P.

5   23(e)(5) ("Any <u>class member</u> may object to the proposal if it requires court approval under this

6   subdivision (e) … .") (emphasis added).  It is black-letter law that "non-class members have no

7   standing to object" to a class action settlement.  *In re Hydroxycut Marketing and Sales Practices*

8   *Litig.*, 2013 WL 5275618, *2 (S.D. Cal. Sept. 17, 2013); *see also San Francisco NAACP v. San*

9   *Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1032 (N.D. Cal. 1999); *Melendres v. City of*

10  *Los Angeles*, 45 Cal. App. 3d 267, 273 (1975) (citing *Sanders v. City of Los Angeles*, 3 Cal. 3d

11  252, 263 (1970)) (objections may "only be made by the members of the class affected").  Mr.

12  Casey's objection must be stricken for this reason alone.

          2.    **Casey Ignored the Court's Order that he Provide Information**
13               **Concerning, *inter alia*, Class Membership**

14        Class Counsel properly served Mr. Casey with a deposition and document subpoena,

15  reminded him that the Class Device he listed on his claim form was replaced for free, and gave

16  him the opportunity to either withdraw his objection or explain himself at deposition and produce

17  evidence to demonstrate that he is a Settlement Class Member.  Fata Decl. at ¶¶ 6-29 & Exs. 5

18  (Subpoena and Document Request), 13 (Notice of Deposition), 23 (letter advising Casey that he

19  is not a Settlement Class Member and asking Casey to withdraw his objection).  Mr. Casey

20  responded by engaging in a cat-and-mouse game, first indicating that he would produce

21  documents and appear for deposition, *id*. at ¶ 10 & Ex. 9, and then ignoring Class Counsel's

22  request to schedule the same, *e.g.*, *id*. at ¶¶ 8-9, 13, 16 & Exs. 7-8, 12, 15.  At no time did Mr.

23  Casey properly object to the subpoena.  Accordingly, Plaintiffs filed a motion to compel,

24  arguing, *inter alia*, that Mr. Casey was not a class member with standing to object, that he had

25  waived his right to object to the subpoena, and that he is likely serving as a proxy for

26  professional objector counsel. Dkt. No. 123 at 3.  The Court held a hearing on January 13, 2014,

27  but Mr. Casey did not appear.  Dkt. No. 130.  Magistrate Judge Ryu found that "Casey failed to

28

-12-

1  timely object to the subpoena, [and] any objections have been waived," and ordered Mr. Casey to

2  appear for deposition by January 20, 2014 and produce documents one day before the deposition.

3  Dkt. No. 126.

4        Mr. Casey ignored Magistrate Judge Ryu's Order in its entirety, claiming (in an untimely

5  response to Plaintiffs' motion to compel filed as the hearing was taking place) that the Court had

6  no authority to order him to do anything.  Dkt. No. 129 at 1-2.[5]  Mr. Casey is wrong.  As an

7  objector, Casey "voluntarily appeared in this litigation by objecting to the … Settlement and was

8  served with a subpoena, and is properly subject to discovery," under Rule 30 or Rule 45 or both.

9  *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531, 532 (N.D. Cal. 2012) (noting

10  that it does not matter whether objectors are considered a parties or non-parties because, either

11  way, they are subject to discovery under Rule 30 and Rule 45).  Moreover (as Class Counsel

12  successfully argued to Magistrate Judge Ryu), discovery concerning an objector's "standing, the

13  bases for his current objections, his role in objecting to this and other class settlements, and his

14  relationships with the counsel that are believed to be behind the scenes manipulating him," is

15  "relevant, needed and reasonably narrowed tailored."  *Id.*[6]  It is well established that an objector

16  who fails to follow the Court's order to provide information necessary to establish class

17  membership does not have standing to object.  *See In re Apple Inc. Sec. Litig.*, 2011 WL

18  1877988, *3 n. 4 (N.D. Cal., May 17, 2011)  (holding that objector "lacks standing to object as

19  he did not provide evidence to show that he is a class member as required by this Court's order");

---

[5] Mr. Casey refused to respond to efforts to schedule his deposition in compliance with Magistrate Ryu's order.  Fata Decl. ¶¶ 21-24, 27 & Exs. 20-23, 26.  On Friday, January 17, 2014, Class Counsel appeared for the deposition, but Casey did not, and neither he nor his counsel has been in contact with Class Counsel. *Id.* at ¶ 28 -29 & Ex. 28.

[6] Class Counsel have ample evidence to suggest that Mr. Casey's actions are being orchestrated by a professional objector, likely attorney Darrell Palmer or one of his colleagues.  That evidence includes the following:  (1) Casey lives in Wisconsin, but mailed his objection with a pre-paid stamp purchased in San Diego County, where Palmer has an office (Fata Decl. ¶ 5 & Exs. 4, 29 (caption)), (2) Palmer represented an objector named "Michael Casey" in *Fogel v. Farmers Group, Inc.*, Los Angeles County Superior Court case no. BC300142 (*Id.*, ¶ 30, Ex. 29); (3) Casey's objection contains tell-tale Palmer language, namely, his attempt to "incorporate by reference" objections filed by other objectors) (*compare* Dkt. 112 ae 2 *with* Fata Decl., Ex. 30 at 6:21-22); (4) Casey admits he has had "assistance" drafting his papers (Dkt. No.129 at 4); (5) Palmer attempted to appear through an ostensible *pro per* objector in *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-CV-01819-CW (N.D. Cal., Sept. 23, 2011).

1    *see also Dennis v. Kellogg Co.*, 2013 WL 6055326, *4 (S.D. Cal. Nov. 14, 2013)  (rejecting

2    objections where objectors "fail[ed] to provide their signatures, telephone numbers, or addresses,

3    all of which are required per the terms of the settlement notice").   Here, Mr. Casey was

4    specifically ordered to produce documents and deposition testimony bearing on, *inter alia*, class

5    membership and standing.   Mr. Casey ignored the order.   Thus, even if Mr. Casey were a

6    Settlement Class Member (which he is not) his objection would be properly disregarded for that

7    reason alone.[7]

8                                3.      **Casey's Objections Lack Merit.**

9            Mr. Casey's objections should also be overruled on their merits because they consist

10   solely of conclusory boilerplate devoid of authority or explanation.   "It is not the role of the

11   Court to make the parties' arguments for them."   *Brooks v. Gomez*, 2013 WL 496339, *7 (N.D.

12   Cal. Feb. 7, 2013).   Rather, "'[o]ur adversarial system relies on the advocates to inform the

13   discussion and raise the issues to the court.'"   *Id.* (citing *Independent Towers v. Washington*, 350

14   F.3d 925, 929 (9th Cir. 2003)).   Accordingly, the courts have not hesitated to reject unsupported,

15   boilerplate arguments like those Mr. Casey makes here.   *See*, *e.g.*, *id.* (rejecting "two-sentence

16   argument" as "woefully inadequate" to explain basis for relief).

17           Here, rather than providing any substantive objection, Mr. Casey makes two cursory

18   objections.   Mr. Casey argues that the 30% fee request is "too much" under "both a lodestar and

19   a percentage of recovery methodologies," without offering any explanation or legal authority.

20   Dkt. No. 122 at 1.   Casey "object[s] to the cy pres recipient that is related to the auto industry –

21   there's no connection to the class," again without any explanation or authority.   *Id.*   He fails to

22   address the compelling legal and factual explanations set forth in Plaintiffs' briefs on these

23   issues.   It is not the Court's obligation to make Mr. Casey's arguments for him, Mr. Casey has

24   _____

25        [7] The Court's Order Granting Conditional Certification of a Settlement Class requires
     objectors to state facts establishing their class membership.  Dkt. No. 88 at ¶24. Mr. Casey's
26   objection states "[a]ttached is a copy of my claim form which provides proof of class
     membership."  Dkt. No. 112 at p. 1.  In actuality, Casey did not attach a copy of his claim form.
27   *See Id.*   Nonetheless, Plaintiffs obtained Mr. Casey's online claim information, and this
     information coupled with the information in Apple and KCC's records disproves Casey's class
28   membership—a fact that Casey has done nothing to refute.

**PLAINTIFFS' RESPONSE TO OBJS. TO SETTLEMENT & SETTLEMENT ADMIN. UPDATE**
(CASE NO. 10-CV-01610)

1  done nothing to inform the discussion, and his objection should be denied.  *See Brooks*, 2013

2  WL 496339, at *7.   Accordingly, in addition to striking Mr. Casey's objection for lack of

3  standing, the objection should be overruled on the merits.[8]

4  **III.        CONCLUSION**

5         This $53 million, all-cash, non-reversionary settlement represents an extraordinary result

6  for Settlement Class Members.  Of more than 161,000 persons who might have objected, only

7  three attempted to, and only one of those was in fact a Settlement Class Member — and he

8  withdrew his objection.  None of the objections asserted—with or without standing, withdrawn

9  or not—presents any even arguably legitimate reason to disapprove the Settlement.  Accordingly,

10  Plaintiffs respectfully ask the Court to enter an order granting Final Approval.

11

12  DATED:  January 24, 2014          FAZIO | MICHELETTI LLP

13

14                                    by    */s/ Dina E. Micheletti*

15                                    Jeffrey L. Fazio (146043)
                                      Dina E. Micheletti (184141)
16                                    FAZIO | MICHELETTI LLP
                                      2410 Camino Ramon, Suite 315
17                                    San Ramon, CA  94583
                                      Telephone:  925-543-2555
18                                    Facsimile:  925-369-0344

19                                    CHIMICLES & TIKELLIS LLP

20                                    By:   */s/ Steven A. Schwartz*
                                      Steven A. Schwartz (*pro hac vice*)
21                                    Timothy N. Mathews (*pro hac vice*)
                                      361 W. Lancaster Avenue
22                                    Haverford, PA  19041
                                      Telephone:  610-642-8500
23                                    Facsimile:  610- 649-3633

24  _____

25         [8] Mr. Casey should not be given any benefit of the doubt as a *pro per* litigant because, at
    minimum,  Mr. Casey admits to being "assisted" by an attorney who simply refuses to identify
26  him/herself.  Dkt. No. 129 at 4.   Such ghost-writing is frowned upon.  *See Walker v. Pac. Mar.
    Assoc.*, 2008 WL 1734757, *2 & n.2 (N.D. Cal. Apr. 14, 2008) ("…[Plaintiff] is warned that the
27  court does not approve of this 'ghost-writing' practice.  Ghost-writing frustrates the application
    of Federal Rule of Civil Procedure 11 which requires all attorneys to verify through their
28  signatures that there are sufficient grounds for the arguments in their pleadings.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Co-Lead Class Counsel*

**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**

By: /s/ *Anthony F. Fata*

Anthony F. Fata (*pro hac vice pending*)
Daniel O. Herrera (*pro hac vice pending*)
30 N. LaSalle, Suite 3200
Chicago, IL 60602
Telephone: 312-782-4880
Facsimile: 312-782-4485

*Proposed State Plaintiffs Liaison Counsel*

Kimberly A. Kralowec (163158)
Elizabeth Newman (257329)
**THE KRALOWEC LAW GROUP**
188 The Embarcadero, Suite 800
San Francisco, CA 94105
Telephone: 415-546-6800
Facsimile: 415-546-6801

Earl L. Bohachek (55476)
**LAW OFFICES OF EARL L. BOHACHEK**
One Maritime Plaza
San Francisco, CA 94111
Telephone: 415-434-8100
Facsimile: 415-781-1034

Rose F. Luzon (221544)
James C. Shah (260435)
**SHEPHERD, FINKELMAN, MILLER & SHAH, LLP**
401 West A Street
Suite 2350
San Diego, CA 92101
Telephone:  (619) 235-2416

Mark A. Chavez
Dan L. Gildor
**CHAVEZ & GERTLER LLP**
42 Miller Avenue
Mill Valley, CA 94941
Telephone: 415-381-5599
Facsimile: 315-381-5572

*Attorneys for Plaintiffs and the Proposed Class*

**PLAINTIFFS' RESPONSE TO OBJS. TO SETTLEMENT & SETTLEMENT ADMIN. UPDATE**
(CASE NO. 10-CV-01610)