**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE APPLE IPHONE/IPOD WARRANTY LITIGATION _____/ | No. C 10-1610 RS<br><br>**ORDER SETTING AMOUNT OF ATTORNEY FEES, COSTS, AND INCENTIVE AWARDS** |

## I. INTRODUCTION

Plaintiffs' attorneys seek to recover $15.9 million in compensation for their efforts in bringing this case and obtaining a favorable settlement that includes a fund of $53 million in cash. The requested amount, intended to cover both fees and costs, represents 30% of the settlement fund. Plaintiffs' claim in this action is that Apple wrongfully denied warranty repairs on iPhone and iPad products by relying on "immersion indicators" that were prone to providing false readings implying the devices had been submerged in liquid. Under the settlement, approximately 132,000 class members will automatically receive cash payments of about $211 per device, even if the full amount of and costs requested is awarded. Another approximately 43,000 class members will receive such

payments upon verification of their claims. The projected payments slightly exceed the average full replacement cost of the devices.

While Apple apparently was already modifying its practices before this action commenced, and even though the settlement was reached without substantial motion practice or other litigation going to the merits, the results here are markedly favorable to the class. While settlements are, by definition, the product of compromise, in this instance most class members will receive the full replacement cost of the device they owned, or more. Under these circumstances, and as explained more fully below, it is appropriate for class counsel to receive a substantial percentage of the settlement fund, even though the resulting award is large. Fees and costs will therefore be awarded according to the Ninth Circuit "benchmark" of 25%, to be applied in this case to the *net* settlement fund after deduction of administrative expenses.

## II. DISCUSSION

### A. Apple's standing to object

Although Apple's liability under the settlement agreement is fixed at $53 million regardless of the size of the attorney fee award, it has vigorously opposed the fee application, arguing the fee recovery should not exceed $8.78 million. Plaintiffs, in turn, insist that Apple has no standing to object to the motion, and that its opposition therefore should be disregarded.

As an initial matter, the fact that Apple will pay out the same dollar amount regardless of the disposition of the fee motion does not mean it has no cognizable interest in where the monies go. One benefit to a defendant in settling an action like this is the potential to create goodwill among its customers, who may be repeat purchasers. Apple's desire to maximize the percentage of the settlement fund that goes into its customers' pockets therefore reflects its own economic interests.

Furthermore, class action settlement agreements in which defendants agree not to contest fee applications up to specified amounts can, in some instances, raise a warning sign that "class counsel have allowed pursuit of their own self-interests and . . . to infect the negotiations." *In re Bluetooth*, 654 F.3d 935, 947 (9th Cir. 2011). It is true that so-called "clear sailing" provisions do not raise the same concerns where, as here, the fees are to come from the settlement fund. *See Rodriguez v. West*

1 *Publishing Corp.*, 563 F.3d 948, 961 n.5 (9th Cir. 2009). Nevertheless, clear sailing provisions, "by their nature deprive the court of the advantages of the adversary process in resolving fee determinations and are therefore disfavored." *Bluetooth*, 654 F.3d at 949 (citation omitted). Given that clear sailing provisions are disfavored for the very reason that they preclude development of the issues through the ordinary adversary process, it follows that it is appropriate to entertain a defendant's opposition to a fee motion in the absence of such a provision.

Finally, even assuming no formal basis for standing, the Court would have discretion to entertain Apple's opposition brief much in the same way it could elect to consider submissions by *amicus curiae*. *See Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir. 1982) (abrogated on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995)) ("The district court has broad discretion to appoint amici curiae."). Accordingly, Apple's arguments will be considered on their merits and not rejected on standing grounds.

### B. Availability of percentage-based fee recovery

Ninth Circuit law is settled that in a "common fund" case such as this one, it generally is appropriate to award fees *either* on the basis of a so-called "lodestar" calculation *or* by applying a "percentage of the fund" to determine the fee amount. *See e.g. Bluetooth*, 654 F.3d at 942 ("Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method."); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) ("Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method.") Apple argues, however, that under current California law, which undisputedly applies in this matter,[1] only the lodestar approach remains permissible.

Apple relies on language from *Serrano v. Priest* ("*Serrano III*") 20 Cal. 3d 25 (1977), a seminal fee-shifting case in California, that "[t]he starting point for every fee award . . . must be a calculation of the attorney's services in terms of the time he has expended on the case." *Id* at 48 n.

---

[1] *See Mangold v. Cal. Pub. Util. Comm'n*, 67 F.3d 1470, 1478-79 (9th Cir. 1995) (finding state law to be applicable in "in determining not only the right to fees, but also the method of calculating the fees.").

3

23 (quotations and citation omitted). Indeed, some post-*Serrano III* appellate opinions have questioned the continued availability of the percentage of fund method. *See e.g. Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1809 (1996)( "The award of attorney fees based on a percentage of a 'common fund' recovery is of questionable validity in California."). Apple also points to a statements in *Jutkowitz v. Bourns, Inc.*, 118 Cal. App. 3d 102 (1981) "[T]he clear thrust of the holding in *Serrano* . . . and the cases upon which that holding relied, is a rejection of any 'contingent fee' principle in cases involving equitable compensation for lawyers in class actions or other types of representative suits." *Id.* at 110.

As plaintiffs point out, however, neither *Serrano III*, *Dunk*, nor *Jutkowitz* were common fund cases. *Serrano III* in fact acknowledged the well-settled principle of awarding fees out of a common fund, distinguishing such cases only on the grounds that in the matter before it, "we can find no such fund." 20 Cal. 3d at 35. Similarly, despite *Dunk's* musing as to the continued viability of a percentage of fund recovery, the court merely held that it is not available in the absence of a settlement fund consisting of a "certain or easily calculable sum of money." 48 Cal. App. 4th at 1809. *Jutkowitz*, too, distinguished precedent applying a percentage of fund recovery method on the "[t]he critical point" that "a fund was created from which the attorney fees could be paid." 118 Cal. App. 3d at 110.

There is no indication any California appellate court has ever directly held that the percent of fund method is unavailable in a true common fund case, such as this one.[2] Additionally, the California Supreme Court itself has cautioned that even in statutory fee-shifting cases, it has not concluded the lodestar method will necessarily always be required. *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1136 (2001) ("[W]e are not mandating a blanket 'lodestar only' approach.")

Whatever merits the lodestar method might have, particularly outside the context of a common fund case, it has also been subject to heavy criticism by commentators and in the courts. *See Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 28-31 (2000) (surveying history and

---

[2] Plaintiffs have provided numerous citations to instances of California trial courts purportedly continuing to apply the percentage of fund method when awarding fees. While such decisions lack significant precedential value and are in no sense binding here, they further support the notion that California law has not foreclosed application of the percentage of fund method in common fund cases.

criticism of the lodestar method). As noted in this district: "the accepted practice of applying the lodestar … to common fund cases does not achieve the stated purposes of proportionality, predictability and protection of the class. It encourages abuses such as unjustified work and protracting the litigation. It adds to the work load of already overworked district courts. In short, it does not encourage efficiency, but rather, it adds inefficiency to the process." *In re Activision Securities Litigation*, 723 F. Supp. 1373, 1378 (N.D. Cal 1989).

Apple has shown that California courts will not apply a pure percentage of fund method for awarding attorney fees in class actions in the absence of an easily quantifiable settlement fund. At the same time, it points to no authority expressly ruling out percentage of fund recovery in circumstances like those present here, nor has it made a persuasive case that the California Supreme Court would likely declare such to be the law in this state. Accordingly, resort to a lodestar calculation is not required in this instance.

C. Amount of award

While the Court has discretion to award fees on the basis of a percentage of the fund, that discretion must be exercised so as to achieve a reasonable result." *Bluetooth*, 654 F.3d at 943. "Thus, for example, where awarding 25% of a 'megafund' would yield windfall profits for class counsel in light of the hours spent on the case, courts should adjust the benchmark percentage or employ the lodestar method instead." *Id.*; *see also In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 148 F.3d 283, 339 (3d Cir. 1998) (explaining that basis for inverse relationship between size of fund and percentage awarded for fees is that "in many instances the increase in recovery is merely a factor of the size of the class and has no direct relationship to the efforts of counsel" (internal quotation marks omitted)). The lodestar calculation also may serve as a "cross-check" when considering a percentage-based fee award. *Vizcaino*, 290 F.3d at 1050. ("[W]hile the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award.")

Here, the $53 million dollar settlement, while perhaps not a "megafund," is sufficiently large to implicate potential windfall concerns. Plaintiffs have claimed a lodestar here of approximately

1  $6.58 million, based on an assumption that only 75% of the hours they have reported incurring
2  would survive a reasonableness review.  Alternatively, plaintiffs suggest a lodestar of only $4.39
3  million, based on discounting their claimed hours by 50%.[3]  Plaintiffs contend that under any
4  lodestar in this range, the $15.9 million they request is justifiable because the "multiplier" would be
5  no greater than approximately 3.62.

6  Were it necessary to calculate a lodestar as the primary basis for the fee award, plaintiffs'
7  submission would be woefully insufficient.  The failure of the various firms even to agree on how
8  many hours each of them reasonably expended, and the group's unwillingness to offer a concrete
9  figure for their claimed lodestar would be fatal.[4]  Nevertheless, as Apple effectively acknowledges,
10 the record is sufficient to conclude that a lodestar in the lower range presented by plaintiffs is
11 reasonable.  Furthermore, plaintiffs are correct that the resulting multiplier necessary to reach a
12 $15.9 award would not be out of bounds, given the success they achieved in this action and the other
13 relevant factors.  *See Vizcaino*, 290 F.3d at 1051 (approving multiplier of 3.65 in lodestar cross-
14 check calculation).  Accordingly, applying a percentage-based fee recovery is within reason here.

15 That said, plaintiffs have not shown that an *upward* adjustment to the 25% "benchmark" is
16 warranted here.  While the results counsel achieved for the class are excellent, the size of the fund is
17 such that applying the standard benchmark is manifestly sufficient to provide fair compensation.[5]
18 Indeed, were any adjustment to the benchmark warranted, it would only be downward, given the
19 concern of a potential windfall.  The inclusion of costs in the award, and the application of the
20 percentage to the *net* settlement fund does mean that the recovery will be less than a straight 25%

---

[3] Notably, each law firm representing plaintiffs disclaims any responsibility for the claims made by other firms as to the hours expended.

[4] Counsel's offer to submit underlying time records misses the point.  It is their burden to cull the records and make a presentation that will assist the Court in calculating any fee award.  While Court review of the underlying records may sometimes be appropriate or even required, plaintiffs must in the first instance eliminate any duplicative or otherwise unreasonable time entries, and must present the information in a format that facilitates review.

[5] It is not irrelevant that members of the plaintiff class will be receiving cash payments somewhat in excess of the average replacement cost for their devices even with this fee and cost award deducted from the settlement fund.  Counsels' success in obtaining a settlement fund large enough both to make class members nearly whole and to compensate themselves on a percentage basis should not be seen as creating an unreasonable windfall.

award on the gross settlement fund, and that reduction is appropriate. Accordingly, plaintiffs' counsel is awarded fees and costs of 25% of the settlement fund remaining after deduction of the expenses of settlement administration. Plaintiffs shall file an accounting setting out the precise amount of fees and costs they recover when calculated and paid.

### D. Incentive awards

Plaintiffs seek incentive awards of $1,000 each for class representatives Gallion, Corsi, and Johal, and a single joint incentive award of $1,000 for class representatives Pennington and White, as husband and wife. Those amounts, not challenged by Apple, are not disproportionate to the recovery of other class members and are otherwise reasonable.

### III. CONCLUSION

The motion for an award of fees, costs, and incentive payments is granted to the extent set forth above. The parties shall submit a proposed order granting final approval of the settlement, and a final judgment, consistent with the discussion at the hearing on the motion.

IT IS SO ORDERED.

Dated: 4/14/14

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE