1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE APPLE IPHONE/IPOD WARRANTY LITIGATION<br><br>This Document Relates to All Actions | No. CV-10-01610<br><br>~~PROPOSED~~ ORDER GRANTING FINAL APPROVAL TO SETTLEMENT AGREEMENT; AWARDING ATTORNEY FEES, COSTS AND INCENTIVE PAYMENTS TO CLASS REPRESENTATIVES; AND DISMISSING CLAIMS OF SETTLEMENT CLASS MEMBERS WITH PREJUDICE<br><br>**AS MODIFIED BY THE COURT** |

1    This matter came before the Court for hearing on January 29, 2014, on the

2    application of Plaintiffs and Class Representatives Charlene Gallion, Raj Johal,

3    Christopher Corsi, Sean Pennington, and Meghan White, for final approval of the

4    settlement of this class action in accordance with the terms of the Settlement

5    Agreement, and Plaintiffs' motion for award of attorney fees, costs, and incentive

6    awards (the "Fee Petition").

7        The Court has carefully reviewed and considered the record in this matter,

8    including the memoranda and supporting declarations submitted in support of the

9    motion for preliminary approval and the exhibits attached thereto, including the

10   proposed Settlement Agreement and each of the Class Notices; Plaintiffs' motion for

11   final approval of the Settlement Agreement; the memoranda in support of the

12   motion for final approval submitted by Plaintiffs and Defendant Apple Inc.

13   ("Apple"); the memoranda and declarations submitted in support of the Fee

14   Petition; the opposition of Apple to the Fee Petition; all objections submitted to the

15   Court and the Parties' responses to those objections; and Apple's motion for

16   clarification concerning the award of attorneys' fees and costs.  On January 29,

17   2014, this Court conducted a hearing at which it heard and considered arguments

18   by the Parties' counsel in favor of final approval of the Settlement Agreement, and

19   in support of and in opposition to the Fee Petition.  On April 14, 2014, the Court

20   issued an Order (Dkt. No. 146) Setting Amount of Attorney Fees, Costs and

21   Incentive Awards, and on April 17, 2014 the Court issued an Order of Clarification

22   Regarding Fee and Cost Award (Dkt. No. 148).

23       Good cause appearing, the Court orders as follows:

24       1.    The Court has jurisdiction over the subject matter of the action, the

25   Class Representatives, the Settlement Class Members, Class Counsel, the

26   Settlement Administrator, and Apple. This Order encompasses the cases and claims

27

28

that have been consolidated herein as *In re Apple iPhone/iPod Warranty Litigation*, No. CV-10-01610 (N.D. Cal.).

2.     Unless otherwise set forth herein, all words with initial capital letters shall have the meaning ascribed to them in the Settlement Agreement (Dkt. No. 76-1).

3.     Class Notice was provided in accordance with the Court's Order Granting Conditional Certification of a Settlement Class, Approval of Forms and Methods of Notice, and Preliminary Approval of Settlement Agreement and Release ("Conditional Approval Order").   Furthermore, as set forth in declarations submitted by the Settlement Administrator and Co-Lead Class Counsel, the Settlement Administrator was also instructed to and did, among other things, (1) send an additional round of email Notice to all proposed Notice recipients (with the exception of those who had already responded to the initial Notice and those to whom prior email Notice had been deemed undeliverable), (2) make additional attempts to locate valid contact information for certain Settlement Class Members, beyond what was described  in the Settlement Agreement, and (3) send "reminder" Notices to certain Direct-Payment Settlement Class Members in an effort to ensure the validity of their postal mailing addresses prior to issuing checks. Class Notice constituted the best notice practicable under the circumstances to all persons and entities within the definition of the Settlement Class; fully complied with the requirements of the Federal Rules of Civil Procedure, including, but not limited to, Rule 23(c)(2)(B); provided sufficient notice of Class Counsel's application for attorneys' fees, costs, and incentive awards to the Class Representatives; constituted and satisfied due process; and constituted sufficient notice to all persons entitled thereto.

4.     In evaluating proposed class-action settlements, district courts are to consider a number of factors, including "[t]he strength of plaintiffs' case; the risk,

1    expense, complexity, and likely duration of further litigation; the risk of
2    maintaining class action status throughout the trial; the amount offered in
3    settlement; the extent of discovery completed and the stage of the proceedings; the
4    experience and views of counsel; the presence of a governmental participant; and
5    the reaction of the class members to the proposed settlement." *Lane v. Facebook,*
6    *Inc.,* 696 F.3d 811, 819 (9th Cir 2012) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d
7    1101, 1126 (9th Cir. 1988), *cert. denied*, 134 S. Ct. 8 (2013)). *See also Churchill*
8    *Village LLC v. General Electric Corp.*, 361 F.3d 566, 575 (9th Cir. 2004).  In the
9    present case, all of these factors commend final approval.  Accordingly, the Court
10   hereby approves the Settlement Agreement having found that it is fair, reasonable,
11   adequate and just to the Settlement Class Members, and further finds as follows,
12   pursuant to the criteria set forth in *Churchill Village LLC*, 361 F.3d at 574, and
13   *Hanlon*, 150 F.3d at 1026.

14   **a.    Strength of Plaintiffs' Case:**    The Court finds that the "the
15   strength of the plaintiffs' case" weighs in favor of approving the Settlement.
16   *Hanlon*, 150 F.3d at 1026.  Plaintiffs' claims implicate factual and legal issues that
17   are vigorously disputed, including whether Apple's Former Liquid Damage Policy
18   provided a proper basis for denial of warranty coverage and whether injury and
19   damages could be determined based on class-wide proof or would require
20   individualized proof for each Class Device. In their respective papers filed in
21   support of the Settlement, the parties discussed evidence and arguments reflecting
22   the disputed nature of the relevant issues.  The novelty of these issues created
23   uncertainty as to Plaintiffs' likelihood of success on their claims, as well as to
24   Apple's defenses to those claims.

25   **b.    Risk, Expense, Complexity, and Likely Duration of Further**
26   **Litigation:**  The Court finds that the "risk, expense, complexity, and likely
27   duration of further litigation," *Hanlon*, 150 F.3d at 1026, weigh in favor of

28

approving the Settlement. Plaintiffs took on substantial risk in bringing this case—Apple has the ability to mount a vigorous defense, and the claims involve novel legal and factual issues. Because of the lack of controlling legal authority and the vigorous disagreement as to the basic facts, these issues presented substantial risk for both sides.

In addition, further litigation would have been costly and time-consuming. Although Plaintiffs had already conducted substantial research and discovery, significant additional discovery—including expert discovery—would have been necessary, Plaintiffs would have had to obtain certification of a class, and both sides would have faced *Daubert* challenges to their experts, before Plaintiffs' claims would be permitted to proceed to trial. The parties represent, and it appears likely, that discovery, summary judgment, *Daubert* proceedings, trial proceedings, and potential appeals would have involved highly technical issues concerning the propriety of Apple's Former Liquid Damage Policy, which would have necessitated additional costly expert analysis and testimony. While Class Counsel reports having engaged in extensive development of the factual and legal issues before the case settled, risks to both sides remained. These procedural steps would have consumed substantial amounts of time and would not have guaranteed recovery for the Class. Accordingly, the Court finds that the risk, expense, complexity and likelihood of further litigation weigh in favor of approving the Settlement. *See Churchill Village LLC*, 361 F.3d at 576.

c.     **The Risk of Maintaining Class Action Status Throughout the Trial:** The Court finds that the "risk of maintaining class action status throughout the trial," *Hanlon*, 150 F.3d at 1026, weighs in favor of approving the Settlement. Maintaining class certification was uncertain in this case for a variety of reasons, including the Parties' dispute as to whether liability and damages could be determined based on class-wide proof or would require individualized proof for each

Class Device. Plaintiffs contended and Apple disputed that Apple, as the proponent of an exclusion from warranty coverage, bore the burden of proving and could not prove that Apple's Former Liquid Damage Policy was a reliable procedure for determining whether a Class Device has been abused or damaged by liquid and should be denied warranty coverage. In light of these issues, there was a risk that class certification would be denied, and even if the Court had initially certified the Class, Plaintiffs would have faced the risk of an appeal pursuant to Fed. R. Civ. P. 23(f) and the additional risk that further discovery, summary judgment, trial proceedings or post-trial appeals may have led to decertification. A court may decertify a class at any time. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (citing *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)).

      **d.**    **The Amount Offered in Settlement:** Particularly in light of these litigation risks, the settlement here is markedly favorable to the Class. Recovery is carefully tailored to the claims in the case, and offers substantial compensation to any consumers affected by Apple's Former Liquid Damage Policy, which Plaintiffs challenged. The $53 million Settlement Fund represents a gross recovery of approximately 156 percent of the average replacement cost of the Class Devices owned by Settlement Class Members entitled to receive payment from the Settlement. Based on the claims data supplied by the Settlement Administrator, and after deduction of 25% of the Settlement Fund for payment of Class Counsel's fees and expenses as awarded by the Court as set forth in the Order the Court issued on April 14, 2014, the Net Settlement Fund is sufficient to pay eligible Settlement Class Members approximately 117 percent of the average replacement cost paid to Apple for Class Devices of the same type and configuration, which represents an average payment of about $241 for each affected Class Device. While the Settlement provides for potential *cy pres* distribution to approved non-profit organizations if the Settlement Fund is not exhausted, any such distribution is

1   likely to be small given the large number of validated claims.  The $53 million non-

2   reversionary fund is also undiminished by any costs of Class Notice and the

3   administration of the claims process, all of which are borne by Apple.

4          As set forth in Declarations submitted by Class Counsel, Apple, and the

5   Settlement Administrator, Apple's records reflect that it denied warranty coverage

6   based on its Former Liquid Damage Policy with respect to approximately 152,000

7   Class Devices.  The parties report and agree that Apple's records do not identify

8   each and every Class Device for which warranty coverage was denied pursuant to

9   Apple's Former Liquid Damage Policy, and that it is not possible to determine

10  precisely how many additional warranty claims Apple may have denied. According

11  to the Settlement Administrator, over 40,000 claims were submitted with respect to

12  Class Devices whose warranty denials were not identified in Apple's records, and

13  over 30,000 of those claims have been approved for payment. Regardless of that

14  number, the settlement clearly represents a substantial recovery of the Settlement

15  Class members' estimated total aggregate potential recovery if Plaintiffs had

16  prevailed on all issues, including maximum potential damages projections, at every

17  stage of this litigation—including class certification, trial and appeals. As such, the

18  $53 million settlement readily satisfies the standards for final approval.  *See, e.g.,*

19  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 (cash settlement of one-sixth the

20  amount of potential recovery was fair and adequate); *Officers for Justice v. Civil*

21  *Service Com.*, 688 F.2d 615, 628 (9th Cir. 1982) (same); *In re Veritas Software Corp.*

22  *Sec. Litig.*, 2005 U.S. Dist. LEXIS 30880 (N.D. Cal. Nov. 15, 2005) (noting that, from

23  1991 to 2003, the median percentage of losses paid in settlement ranged from 2.7%

24  to 7.2%).

25          **e.    The Extent of Discovery Completed and the Stage of the**

26  **Proceedings:**  The record demonstrates that Plaintiffs had the benefit of extensive

27  document discovery and deposition testimony prior to entering into the settlement.

28

1   Before settlement in principle was reached, Plaintiffs had propounded and received

2   responses to eight sets of document requests, 14 sets of interrogatories, and five sets

3   of requests for admissions; Apple produced approximately 265,000 pages of

4   documents; non-parties produced approximately 77,000 pages of documents; and

5   Class Counsel had taken multi-day depositions of a number of Apple witnesses and

6   non-party witnesses.   Moreover, significant confirmatory discovery continued after

7   the Parties reached agreement in principle to settle this case, all of which ensured

8   that Class Counsel had sufficient information to evaluate the strength of Class

9   Members' claims and verify that the proposed Settlement is fair and reasonable.

10          **f.   The Experience and Views of Counsel:**  The record leaves no

11   doubt that the Parties were represented by highly-regarded counsel with significant

12   experience litigating consumer class actions.   Counsel for both parties recommend

13   approval of the settlement.

14          **g.   The Reaction of the Class Members to the Proposed**

15   **Settlement:**   Settlement Class Members have overwhelmingly signaled their

16   approval of the proposed Settlement.  In connection with the extensive and effective

17   notice campaign, the Settlement Administrator sent email and/or postcard notice to

18   all Settlement Class Members who were identified in Apple's records as having been

19   denied warranty replacement on the basis of its Former Liquid Damage Policy and

20   millions of additional Apple customers who were identified in Apple's records as

21   having potentially tendered their device for warranty replacement during the

22   relevant period. The Settlement Administrator reports that more than 30,000

23   claims have been approved for payment, in addition to payments that will be made

24   (without submission of a claim form) to Direct-Payment Settlement Class Members

25   who own more than 136,600 Class Devices.   In contrast, just 23 Settlement Class

26   Members have elected to opt out of the Settlement and only one Settlement Class

27   Member initially objected to it.   As discussed in paragraph 11 below, however, that

28

lone objector withdrew his objection; thus, at the time of the Final Approval hearing, there was not a single objection to the Settlement from any Settlement Class Member, a fact that strongly supports final approval of the proposed Settlement. In addition, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, notice was issued to the Attorneys General of each state, none of whom submitted an objection.

**h.   Whether the Settlement was the Product of Collusion Among the Negotiating Parties:**  There is no indication of any collusion between the negotiating parties.  To the contrary, the record demonstrates that the Settlement was reached after extensive mediation, which included six full-day mediation sessions and numerous telephone conferences with experienced mediators:  retired U.S. Magistrate Judge Edward Infante and Catherine Yanni of JAMS.  According to Mediator Yanni, "the intensity of the adversarial process was readily apparent to [her] at every stage of the mediation" and "the negotiations which ultimately resulted in the Settlement Agreement were intensive, undertaken by sophisticated and experienced counsel on both sides in good faith and conducted completely at arm's length."  The record also reflects that the parties aggressively litigated their respective claims and defenses. The arms-length, adversarial nature of the settlement negotiations and overall litigation favors final approval of the proposed settlement.

The Ninth Circuit recently identified three factors that may indicate a disregard for the interests of the class: (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the parties negotiate a "clear sailing" arrangement providing for payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair

1   settlement on behalf of the class; and (3) when the parties arrange for sums not

2   awarded to the Class to revert to defendants rather than be added to the class fund.

3   *See In Re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

4       None of these factors is present here.  The Settlement consists of a $53

5   million non-reversionary Settlement Fund and Apple's agreement to bear

6   separately the expense of settlement administration, including all notice and

7   claims-administration costs.  Class Counsel will not receive a disproportionate

8   amount of the fund; rather, as set forth below (per this Court's Orders dated April

9   14 and 17, 2014), based on the Ninth Circuit benchmark, they will receive 25% of

10  the $53 million Settlement Fund to cover both fees and expenses. Moreover, as set

11  forth above, the dollar amounts Settlement Class Members will receive are

12  significant: the $53 million Settlement Fund represents a gross recovery of

13  approximately 156 percent of the average replacement cost of the Class Devices

14  owned by all Direct-Payment Settlement Class Members and Claims-Made

15  Settlement Class Members eligible for payment, and Settlement Class Members

16  eligible to receive payment will receive an average of more than $241 for each

17  affected Class Device after the payment of Class Counsels' attorney fees and

18  expenses, which represents a net recovery of about 117 percent of the average

19  replacement cost of their Class Devices.  Finally, the Settlement Agreement does

20  not contain a "clear sailing" arrangement, and Apple objected vigorously to the

21  attorneys' fee award sought by Class Counsel, which the Court considered along

22  with the oral arguments by Apple's counsel at the Final Approval Hearing.  Each of

23  these factors favors final approval of the proposed Settlement.

24      **i.   Objections to the Settlement, If Any:** As explained in paragraph

25  11 below, the objection by one Settlement Class Member who withdrew his

26  objection, and the written communications by non-Settlement Class Members who

27  at all material times lacked standing to object, are overruled. Furthermore, the

28

arguments raised in these objections did not materially advance or alter the Court's analysis of the propriety of granting approval of the Settlement in this case, including the terms of the Settlement, the Notice, the Class Representative Incentive Awards, and the Class Counsel Fee and Cost Award.

5.　　When the parties reach a proposed settlement prior to class certification, the court must review the Settlement Agreement and approve "both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co*, 327 F. 3d 938, 952 (9th Cir. 2003). To be certified for the purpose of settlement, the proposed Settlement Agreement must satisfy the requirements of Federal Rule of Civil Procedure 23(a)—"(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class"—and the predominance and superiority criteria of Rule 23(b). *Hanlon*, 150 F.3d at 1020, 1022. Because this is a settlement, the "court need not inquire whether the case, if tried, would present intractable management problems, Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem Prods. Inc., v. Windsor,* 521 U.S. 591, 621 (1997). Thus, the Court must determine whether the Settlement Class is appropriate for certification under Federal Rule of Civil Procedure 23. *Amchem*, 521 U.S. at 620; MANUAL FOR COMPLEX LITIGATION § 21.632.

6. This action meets all prerequisites of Federal Rule of Civil Procedure 23(a) and 23(b)(3) for class certification, including numerosity, commonality, typicality, ascertainability, adequacy of representation, predominance of common issues, and superiority. Specifically, this Court finds that, with regard to the proposed Settlement Class, Rule 23(a) is satisfied in that:

### a.      Numerosity is Satisfied

Rule 23(a)(1) requires that the class be so numerous, joinder of all class members would be "impracticable." Fed. R. Civ. P. 23(a)(1). To satisfy this requirement, Plaintiffs "need not state the exact number of potential class members, nor is there a specific number that is required." *In re Facebook, Inc., PPC Advertising Litig.*, 282 F.R.D. 446, 452 (N.D. Cal. 2012). "[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members." *Id.* (class consisting of more than 100,000 members "well over the threshold for 'numerosity'"). Here, there are over 160,000 Settlement Class Members approved for payment. Accordingly, numerosity is readily satisfied.

### b.      Commonality is Satisfied

Rule 23(a)(2) requires that "there are questions of fact or law common to the class." Fed. R. Civ. P. 23(a)(2). Commonality may be demonstrated when the claims of all class members "depend on a common contention" and "even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 2556 (2011) (quotation omitted). The common contention must be such that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 2551. "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F. 3d at 1019. Put differently, even where the "circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Parra v. Bashas, Inc.*, 536 F.3d 975, 978-79 (9th Cir. 2008).

Here, each Settlement Class Member was denied warranty coverage pursuant to Apple's Former Liquid Damage Policy and there are at least two basic issues that are common to the entire Settlement Class: (1) whether Apple breached its warranties and the implied covenant of good faith and fair dealing by relying on

1   that policy to deny warranty claims; and (2) whether application of that policy to

2   determine that a Class Device had been damaged by liquid constituted common-law

3   fraud and violations of the CLRA and UCL.   Regardless of which side is correct,

4   these issues are common to each and every Settlement Class Member based on

5   common evidence.  Accordingly, commonality is satisfied.

6       **c.      Typicality is Satisfied**

7       Rule  23(a)(3)  requires  that  "the  claims  or  defenses  of  the  representative

8   parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).

9   Typicality ensures that "the interests of the named representatives align with the

10  interests of the class."  *Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168,

11  1175 (9th Cir. 2010) (citations omitted).   "The test of typicality is whether other

12  members have the same or similar injury, whether the action is based on conduct

13  which is not unique to the named plaintiffs, and whether other class members have

14  been injured by the same course of conduct."  *Id.* (citations omitted).  Typicality does

15  not require that the representative's claims be identical, but only that they are

16  "reasonably co-extensive with [the claims] of absent class members."  *Hanlon*, 150

17  F.3d at 1020.  Typicality is satisfied if the class representative's claims arise from

18  the same course of conduct and are based on the same legal theory as the other

19  class members' claims.  *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 110 (N.D. Cal.

20  2008).

21      As discussed above, the entire Settlement Class is affected by the same

22  conduct—the application of Apple's Former Liquid Damage Policy  to deny warranty

23  coverage—and each Class Representative has been affected by that conduct in the

24  same way that every other Settlement Class Member has been affected:  by having

25  their warranty deemed void based on application of that policy.

26

27

28

1

### d. Adequacy of Representation is Satisfied

2 The proposed Class Representatives and Class Counsel must "fairly and

3 adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This

4 prerequisite requires the Court to consider two questions: "(1) do the named

5 plaintiffs and their counsel have any conflicts of interest with other class members

6 and (2) will the named plaintiffs and their counsel prosecute the action vigorously

7 on behalf of the class?" *Hanlon*, 150 F.3d at 1020. The record shows that the Class

8 Representatives' interests are identical to those of the Settlement Class, thus there

9 are no conflicts of interest. The record also demonstrates that Class Counsel and

10 the Class Representatives have prosecuted, and will continue to prosecute, this case

11 vigorously, effectively, and in the best interests of the Settlement Class.

12

### e. Predominance is Satisfied

13 The Settlement Class also satisfies the "predominance" criterion, which

14 requires "the questions of law or fact common to class members predominate over

15 any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). A class

16 fits into Rule 23(b)(3) when it is "sufficiently cohesive to warrant adjudication by

17 representation," *Amchem*, 521 U.S. at 623, and "the actual interests of the parties

18 can be served best by settling their differences in a single action[,]" *Hanlon*, 150

19 F.3d at 1022 (citations omitted). The Settlement Class is limited to consumers who

20 had their warranty claims denied by Apple due to Apple's Former Liquid Damage

21 Policy, which applied to all Class Devices during the Relevant Time Period.

22 The propriety of using that policy to deny warranty claims is a common

23 question that, if the case had proceeded to trial, would have been resolved based on

24 common evidence. These "common questions present a significant aspect of the case

25 . . . [that] can be resolved for all members of the class in a single adjudication."

26 *Hanlon*, 150 F.3d at 1022; *see also Amgen, Inc. v. Connecticut Retirement Plans and*

27 *Trust Funds*, 133 S.Ct. 1184, 1191 (2013) ("Rule 23(b)(3) requires a showing that

28

1    questions common to the class predominate, not that those questions will be an-

2    swered, on the merits, in favor of the class").

3                    **f.      Superiority is Satisfied**

4          The Settlement Class satisfies the "superiority" prerequisite, which requires

5    that "a class action is superior to other available methods for fairly and efficiently

6    adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The superiority criterion's

7    purpose is the promotion of judicial economy and the assurance that a class action

8    is the "most efficient and effective means of resolving the controversy." *Wolin*, 617

9    F.3d at 1175. A class action is superior when it "will reduce litigation costs and

10   promotes greater efficiency," *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234

11   (9th Cir. 1996), and "no realistic alternative exists" for managing the class

12   members' claims, *id*. at 1234-35.

13         Prior to commencing litigation, each Class Representative sought warranty

14   coverage from Apple, but Apple refused to provide it based on its Former Liquid

15   Damage Policy. *See, e.g.*, Master Comp. (Dkt. No. 53) ¶¶ 37-42, 46-49, 54-56;

16   Micheletti Decl (Dkt. No. 76) ¶ 4 & nn. 1-2. There is no question that adjudicating

17   more than one hundred thousand claims raising the same issue—the propriety of

18   that policy—is vastly superior to trying each claim individually. The cost of

19   discovery alone would preclude the prosecution of individual actions, particularly

20   when considered in light of the fact that even if individuals were willing to spend

21   the time and money on obtaining the information needed to support their claims,

22   they likely would also require the help of expensive experts to make sense of the

23   highly technical nature of that evidence. Given that the weighted average

24   replacement cost for a Class Device is $203.89, individual actions would clearly not

25   be economically feasible. Consequently, class-action litigation represented the only

26   viable vehicle to prosecute and obtain a meaningful recovery for Settlement Class

27   Members' claims.

28

7.     Pursuant to Rule 23(c), the Settlement Class as finally certified shall be defined as follows:

> All United States residents who are or were owners of a Class Device (1) that was tendered to Apple in the United States for repair or replacement during the Relevant Time Period; (2) at the time of tender, the Class Device was within either the one-year limited warranty period or, if covered by an AppleCare Protection Plan, the two-year plan coverage period; and (3) repair or replacement of the tendered Class Device was denied by Apple on the basis of Apple's Former Liquid Damage Policy.  The Settlement Class excludes counsel for the parties and members of their immediate families; Apple; any entity in which Apple has a controlling interest; Apple's directors, officers, and employees; Apple's legal representatives, successors, and assigns; the presiding Judges in the Federal and State Actions; and all persons who validly request exclusion from the Settlement Class.

> Apple's "Former Liquid Damage Policy" means Apple's former policy of excluding from warranty coverage an iPhone or iPod touch whose headphone jack and/or dock connector LCI (or LSI) turned pink or red.  The Class Devices include all iPhone and iPod touch models that were the subject of a warranty claim that was denied based on Apple's Former Liquid Damage Policy.  Apple's Former Liquid Damage Policy was in effect for iPhone through December 31, 2009, and for iPod touch through June 30, 2010.

8.     The prior appointment of Charlene Gallion, Raj Johal, Christopher Corsi, Sean Pennington, and Meghan White as Class Representatives is hereby confirmed.

9.     The prior appointment of Fazio | Micheletti LLP and Chimicles & Tikellis LLP as Co-Lead Class Counsel; the appointment of Cafferty Clobes Meriwether & Sprengel LLP as State Plaintiffs' Liaison Counsel; and the appointment of Fazio | Micheletti LLP, Chimicles & Tikellis LLP, The Kralowec Law Group, the Law Offices of Earl Bohachek, Chavez & Gertler LLP, Cafferty Clobes Meriwether & Sprengel LLP, Shepherd, Finkelman, Miller & Shah LLP, Bohrer Law Firm LLC, and Keogh, Cox & Wilson as Class Counsel is hereby confirmed.

10.     The prior appointment of Kurtzman Carson Consultants LLC as the Settlement Administrator is hereby confirmed.  The Settlement Administrator shall

1   in good faith continue to administer the processing of claims and making of

2   payments as set forth in the Settlement Agreement. All decisions regarding

3   settlement administration shall be made jointly between Apple and Class Counsel.

4   Counsel for the Parties will first attempt to resolve any disputes that may arise

5   concerning settlement administration through meet and confer informally between

6   themselves. If counsel cannot reach an agreement, the matter will be submitted to

7   the Court for determination.

8          11.    **Objections to the Settlement.** Rule 23 grants "class members" the

9   right to object to settlements. *See* Fed. R. Civ. P. 23(e)(5) ("Any <u>class member</u> may

10  object to the proposal if it requires court approval under this subdivision (e) . . ."),

11  "non-class members have no standing to object" to a class action settlement. *In re*

12  *Hydroxycut Marketing and Sales Practices Litig.*, 2013 WL 5275618, *2 (S.D. Cal.

13  Sept. 17, 2013). *See also San Francisco NAACP v. San Francisco Unified Sch. Dist.*,

14  59 F. Supp. 2d 1021, 1032 (N.D. Cal. 1999) (same); *Melendres v. City of Los Angeles*,

15  45 Cal. App. 3d 267, 273 (1975) (objections may "only be made by the members of

16  the class affected") (citing *Sanders v. City of Los Angeles*, 3 Cal. 3d 252, 263 (1970)).

17         Only one Settlement Class Member—J. Scott Kessinger—objected to this

18  Settlement. Mr. Kessinger withdrew his objections after Magistrate Judge Ryu

19  ordered him to sit for deposition. Thus, Mr. Kessinger's objections are overruled on

20  this ground. Three non-Settlement Class Members—Claudio Martino, Mark

21  Bradshaw, and Michael Casey—also purported to submit "objections," but these

22  individuals do not have standing to object because they are not Settlement Class

23  Members; thus their objections are overruled on this ground. Upon learning that he

24  was not a Settlement Class Member, Mr. Martino withdrew his objection.

25  Notwithstanding that Mr. Kessinger withdrew his objection and Messrs. Martino,

26  Bradshaw, and Casey have no standing to object due to their lack of standing, the

27  Court, as explained below, has reviewed and considered each of the issues raised by

28

1   these individuals and hereby overrules their objections on the merits.  Furthermore,

2   none of the objections filed by Kessinger, Martino, Bradshaw, or Casey materially

3   advanced the Court's analysis in approving the Settlement and setting the amount

4   of the Class Representative incentive awards or Class Counsel Attorneys' Fee and

5   Cost Award.

6       a.       **J. Scott Kessinger:**  The "relief" Mr. Kessinger purported to seek on

7   behalf of the Settlement Class before he withdrew his objection was already

8   afforded by the Settlement Agreement.  For example, Mr. Kessinger sought an order

9   "[r]equiring that Defendant mail payments to all known class members to their last

10  known addresses, and only require Class Members who cannot be reached by mail

11  with payment to contact the Settlement Administrator to update their mailing

12  addresses" (Dkt. No. 111 at 15).   While there is no rule that a class action

13  settlement must include a direct–payment component to warrant final approval, the

14  Settlement Agreement in this case does, in fact, require the Settlement

15  Administrator to attempt to validate and update postal mailing addresses for all

16  Direct-Payment Settlement Class Members (defined in the Settlement Agreement

17  as a "Settlement Class Member whose payment from the Settlement Fund can be

18  processed without the need for submission of a Claim Form") (Dkt. No. 76-1 ¶ 1.P),

19  to reach out to those for whom the Settlement Administrator does not have a valid

20  postal address, and to send all Direct-Payment Settlement Class members for whom

21  a postal address could be located a check for their share of the Settlement Fund

22  without requiring them to submit a claim form (*id*. ¶¶ 24-26, 34). Declarations

23  submitted by the Settlement Administrator and Class Counsel confirm that those

24  steps were performed, and over 130,000 checks will be issued without the need for

25  submission of a claim form. Each of Mr. Kessinger's objections to the claims process

26  is therefore overruled.

27

28

-17-

Mr. Kessinger also purported to seek an order "[p]rohibiting the parties from disbursing any funds to any *cy pres* beneficiaries, and instead taking such remaining funds and paying same to the Class members." (Dkt. No. 111 at 15.)  A Settlement is not deficient simply because it contains a *cy pres* component.  Here, however, the *cy pres* aspect of the Settlement Agreement already provides that there will be no *cy pres* distribution unless there is a balance remaining in the Net Settlement Fund after the Parties "use their best efforts to fully compensate class members."  (Dkt. No. 76-1, ¶ 18.) Because the amount of approved payments to Direct-Payment and approved Claim-Made Settlement Class Members is sufficient to exhaust the Net Settlement Fund, any potential *cy pres* distribution will be limited to any residual as a result of checks issued to Settlement Class Members that are not cashed.  To the extent there are any uncashed checks, the Settlement Administrator is required to take appropriate follow-up steps with the recipients of uncashed checks in an effort to maximize the number of checks that are cashed. (*Id.* ¶ 38.)  Any *cy pres* distributions will be limited to the dollar amount of checks that remain uncashed notwithstanding these efforts and any additional "best efforts" by the parties "to fully compensate class members."  (*Id.* ¶ 18.)  Because the Settlement Agreement also provides that Settlement Class Members are eligible to receive up to 200% of the average replacement costs of their Class Devices listed in the Settlement Agreement, (*Id.* ¶ 33), those "best efforts" might include redistribution of unclaimed funds to other Class Members where appropriate and specifically approved by the Court.  *See Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990) ("Federal courts have broad discretionary powers in shaping equitable decrees for distributing unclaimed class action funds.").

1   Accordingly, each of Mr. Kessinger's objections concerning the potential *cy*

2   *pres* distribution of Settlement Funds in this case is overruled.[1]

3   Mr. Kessinger also sought an order "barring the law firm of Chavez and

4   Gertler, LLP from receiving any attorney's fees in this matter, and disqualifying the

5   firm as class counsel due to the business relationship the firm has with the cy pres

6   beneficiary the Center for Auto Safety." (*Id.* at 16.)  That request is denied on the

7   ground that, even assuming Kessinger had standing to raise that particular issue,

8   he failed to demonstrate a sufficient factual or legal basis for denying fees to that

9   firm.

10   **b.   Claudio Martino:**  Mr. Martino is not a Settlement Class Member

11   because, as reflected in Apple's records, his iPhone was not under warranty at the

12   time he brought it to an Apple store to seek warranty coverage.   Mr. Martino

13   withdrew his objection after learning this fact. (Dkt. No. 117.)   His withdrawn

14   objection related to the sufficiency of the Notice program on the ground that,

15   according to Mr. Martino, one of two email Notices of the proposed settlement ended

16   up in his spam email folder, the content of which he did not review until "early in

17   November," which was almost two months after receipt and after the deadline for

18   submitting claims had expired.  Mr. Martino did not dispute that Notice was timely

19   sent; he simply contended that it did not end up in his in-box.

20   This objection is overruled. Courts routinely approve email notice campaigns

21   and, inevitably, some email messages will end up in a spam folder—just as some

22   postal mail will never reach its intended recipient. Courts have consistently

23   overruled objections based on this fact. *See e.g.*, *Cohorst v. BRE Props.*, 2011 U.S.

24   Dist. LEXIS 151719 (S.D. Cal. Nov. 9, 2011) (rejecting objection that class notice

25   was found in a spam folder); *Lane v. Facebook, Inc.*, 2010 U.S. Dist. LEXIS 24762

26

27   [1] Mr. Kessinger's objections to the proposed *cy pres* beneficiaries are

28   addressed and overruled for the reasons set forth in paragraphs 13-15, below.

-19-

1   (N.D. Cal. Mar. 17, 2010) (same); *Browning v. Yahoo! Inc.*, 2007 U.S. Dist. LEXIS

2   86266 (N.D. Cal. Nov. 16, 2007) (rejecting objection that some class members may

3   have believed emailed notice was a "phishing" scam). Moreover, Notice in this case

4   also included, but was not limited to, two rounds of Notice by email, post-card notice

5   to certain potential Settlement Class Members, and published notice in *MacWorld*

6   and *USA Today* as a backup. The Settlement Administrator reports that the

7   Settlement also garnered significant press coverage. *See* Passarella Declaration

8   (Dkt. No. 99) ¶ 44. As set forth in paragraph 3, above, the Notice program in this

9   case constituted the best notice practicable under the circumstances to all persons

10  and entities within the definition of the Settlement Class. Mr. Martino's objection

11  is, therefore, overruled.

12      **c.   Mark Bradshaw:** Mr. Bradshaw is not a Settlement Class Member

13  because he was not denied warranty coverage pursuant to Apple's Former Liquid

14  Damage Policy. Nor does he object to the Settlement. Rather, Mr. Bradshaw asks

15  that this Court extend the Relevant Time Period for the Settlement Class. Mr.

16  Bradshaw concedes facts indicating that he is not a Settlement Class Member

17  because he was denied warranty coverage outside the Settlement's Relevant Time

18  Period, thus, Mr. Bradshaw does not have standing to seek to alter the terms of the

19  Settlement Agreement; and his request is denied. Additionally, Mr. Bradshaw's

20  complaint goes to the form of compromise Plaintiffs chose to accept by settling, and

21  is not a basis for deeming the Settlement Agreement's terms unfair or inadequate;

22  thus, it is overruled for this reason as well. Furthermore, Mr. Bradshaw is not a

23  Settlement Class Member because Apple records show that (1) the warranty had

24  expired on Mr. Bradshaw's iPhone at the time he tendered it for repair, and (2)

25  repair or replacement was not denied on the basis of Apple's Former Liquid Damage

26  Policy during the Relevant Time Period. (*See* O'Neil Declaration (Dkt. No. 139) ¶ 2.)

27  The Court notes, however, that the Settlement Agreement's narrowly-tailored

28

1  Release is limited to warranty claims denied pursuant to Apple's Former Liquid

2  Damage Policy or during the Relevant Time Period and it therefore does not bar any

3  claims Mr. Bradshaw believes he may have against Apple.

4  **d.  Michael Casey:**  The objections made by Mr. Casey are overruled on

5  the ground that the parties have supplied the Court with evidence that the Class

6  Device for which Mr. Casey filed a claim was replaced by Apple for free under

7  warranty, *see* O'Neil Declaration (Dkt. No. 139); Mr. Casey is therefore not a

8  Settlement Class Member because he was not denied warranty coverage pursuant

9  to Apple's Former Liquid Damage Policy, and does not have standing to object to the

10 Settlement Agreement.   Mr. Casey was given ample opportunity to rebut the

11 parties' evidence and attempt to establish his status as a Settlement Class Member,

12 but he declined to do so.

13 Mr. Casey also failed to comply with paragraph 24 of the Conditional

14 Approval Order, which requires objectors to supply the Court with information (i)

15 identifying his or her Class Device, (ii) the approximate date when and Apple store

16 location where Apple denied warranty coverage, and (iii) the Class Device's serial

17 number or Apple ID for the iTunes account that the Settlement Class Member used

18 with the device. While Mr. Casey's objection indicates that it is accompanied by a

19 claim form "which provides proof of class membership," no such claim form was filed

20 with the objection (*see generally* Dkt. No. 112), nor did Mr. Casey seek to amend his

21 objection to include the missing information.

22 Moreover, Mr. Casey did not comply with Magistrate Judge Ryu's Order (Dkt.

23 No. 126) requiring him to appear for deposition and to produce documents requested

24 by Plaintiffs, including documents regarding whether he was a Settlement Class

25 Member.  In particular, after Judge Ryu ordered Mr. Casey to appear for deposition

26 and produce documents, Class Counsel provided Mr. Casey with notice of the date

27 and time for his deposition and document production in Madison, Wisconsin, which

28

1   Mr. Casey indicated is his place of residence. Class Counsel traveled to Madison,

2   Wisconsin, for the deposition and document production, but Mr. Casey did not

3   appear. Fata Declaration (Dkt. No. 141-4) ¶¶ 28-29.

4       Notwithstanding Mr. Casey's failure to supply the requisite information

5   concerning his membership in the Settlement Class, the record demonstrates that

6   the parties were able to retrieve relevant information from Apple's files and from

7   the Settlement Administrator's files. That evidence (which is unrebutted)

8   demonstrates that Mr. Casey is not a Settlement Class Member and does not have

9   standing to object to the Settlement; thus his objections are overruled on this

10  ground. Mr. Casey's objections are also overruled on the merits for the reasons

11  similar objections raised by Mr. Kessinger were overruled. Additionally, Mr.

12  Casey's objections consist solely of conclusory boilerplate statements that are devoid

13  of authority or explanation. "It is not the role of the Court to make the parties'

14  arguments for them." *Brooks v. Gomez*, 2013 WL 496339, *7 (N.D. Cal. Feb. 7,

15  2013). Rather, "'[o]ur adversarial system relies on the advocates to inform the

16  discussion and raise the issues to the court.'" *Id.* (quoting *Independent Towers v.*

17  *Washington*, 350 F.3d 925, 929 (9th Cir. 2003)). Accordingly, Mr. Casey's objections

18  are overruled in their entirety.

19      12.   The Net Settlement Fund shall be distributed to Settlement Class

20  Members in the manner and amounts set forth in the Settlement Agreement. To

21  the extent there is a balance remaining in the Net Settlement Fund after the

22  Settlement Administrator, with the assistance of the Parties, uses its best efforts to

23  compensate fully Settlement Class Members as provided in the Settlement

24  Agreement, such balance shall be split evenly between and distributed *cy pres* at

25  the conclusion of the claims administration process to the following organization[s],

26  to be used in accordance with the proposals set forth in Ex. J to the Settlement

27  Agreement: Center for Auto Safety ("CAS"), Consumer Federation of America,

28

Consumer's Union, National Association of Consumer Advocates, and the National Consumer Law Center.

13.   **Objections to Proposed *Cy Pres* Recipients:**   Messrs. Kessinger and Casey's objections to the proposed *cy pres* beneficiaries are overruled. The identities of and the proposals submitted by the *cy pres* recipients selected by the parties satisfy the requirement that there be "a driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Nachshin v. AOL, LLC,* 663 F.3d 1034, 1038 (9th Cir. 2011). *See also Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (same).   Each organization focuses on consumer protection, has a demonstrated track record in research regarding and in educating and assisting consumers with the resolution of warranty-related disputes and violations of consumer protection statutes involving warranty-related issues, and has proposed using any *cy pres* funds to further their activities in that regard—which are the very issues raised in Plaintiffs' complaints.   Accordingly, providing funds to these recipients is appropriately aligned with the "purpose" of the lawsuit and the plaintiff class. *See Nachshin,* 663 F.3d at 1039.

14.   With respect to the CAS, Mr. Kessinger asserts that it intends to use any *cy pres* funds to promote "safe driving" and "driver education," and Mr. Casey asserts that "there's no connection to the class."   The parties have shown these objections to lack a factual basis.   CAS does not propose to use any *cy pres* funds to promote 'safe driving" or for any other issue unrelated to the purpose of this lawsuit.   Rather, CAS proposes to use any *cy pres* funds to "(1) aid consumers seeking to resolve warranty disputes stemming from telematic devices; (2) increase its work on telematic-device usage in motor vehicles, emphasizing defects, warranties, and safety; and (3) develop self-help literature for consumers with telematic device problems." (Dkt. No. 76-1, Ex. J.)   In the declaration CAS submitted in opposition to Kessinger's objections, CAS explains that "based on

1    CAS's experience with automakers providing separate warranties for products like

2    tires and batteries that are installed on new motor vehicles, CAS anticipates that

3    automakers will also provide separate warranties for the consumer electronics that

4    they install in new vehicles." (Dkt. No. 141-3 ¶ 30.)  CAS explains that it would use

5    any *cy pres* funds to "expand its work in the growing area of automotive electronics

6    to obtain better, more comprehensive warranty coverage and to prevent abuses by

7    warranty providers . . . and to bring such unfair and deceptive practices to the

8    attention of federal regulatory agencies, such as NHTSA and the FTC." (*Id.*)

9         15.   CAS also represents that the automobile is a fertile area for the

10   development of consumer electronics, and cites to the activities of the iPod's

11   inventor (and former Apple executive), Tony Fadell, who has been an advocate of

12   the   relationship   between   automotive   design   and   technology. *See*, *e.g.*,

13   http://www.prnewswire.com/news-releases/father-of-the-ipod-tony-fadellwill-join-

14   automotive-all-stars-at-2012-autoweek-design-forum-135519008.html. (*Id.*   ¶   28.)

15   CAS also points out that Apple has demonstrated on its website that the technology

16   that integrates the iPhone and the iPod into cars and trucks is ubiquitous in the

17   automotive industry, and Apple's new CarPlay technology allows its iOS 7 operating

18   system directly to control a vehicle's audio-visual and navigation systems. *See*

19   http://www.apple.com/ipod/carintegration/ (noting that the iPhone and iPod are

20   integrated into virtually every major auto manufacturers' vehicles, from the Mini to

21   the Rolls Royce); http://www.apple.com/ios/features/ (describing Apple CarPlay

22   technology). *See also Google, Apple to battle over smart cars at CES,* Wall Street

23   Journal   (Dec.   30,   2013)   (available   online   at

24   http://www.foxnews.com/tech/2013/12/30/google-apple-to-battle-over-smart-cars-at-

25   ces/) (noting that "[t]he car is the ultimate mobile device").  Accordingly, Plaintiffs

26   have demonstrated that CAS's proposal is appropriately tethered to the nature of

27   Plaintiffs' lawsuit and to the interests of the silent class members.

28

16.     After review of the parties extensive submissions, consideration of the parties' arguments at the Final Approval hearing on January 29, 2012, and for the reasons set forth in the Court's Order Setting Amount of Attorney Fees, Costs and Incentive Awards (Dkt. No. 146) and the Court's Order of Clarification regarding Fee and Cost Award (Dkt. No. 148), Class Counsel are awarded fees and costs of 25% of the Settlement Fund.  Pursuant to paragraphs 18 and 21 of the Settlement Agreement (Dkt. No. 76-1), Apple is separately paying all costs of notice and settlement administration in addition to the $53 million Apple is required to pay into the Settlement Fund; thus the Court has awarded Class Counsel $13.25 million (25% of $53 million) in fees and costs. The Court also approves incentive awards of $1,000 each for Class Representatives Gallion, Corsi, and Johal, and a single joint incentive award of $1,000 for Class Representatives Pennington and White, husband and wife.  (*Id.*)

17.     As of the Effective Date, the Class Representatives and all Settlement Class Members shall, as set forth in the Settlement Agreement, be forever barred from bringing or prosecuting, in any capacity, any action or proceeding that involves or asserts any of the Released Claims against any Released Person and shall conclusively be deemed to have released and forever discharged the Released Persons from all Released Claims.

18.     As of the Effective Date, the Class Representatives and all Settlement Class Members shall conclusively be deemed to have acknowledged that the Released Claims may include some Released Claims that are not known or suspected to exist as of the Effective Date.  The Class Representatives and all Settlement Class Members nonetheless release all such Released Claims against the Released Persons. Further, as of the Effective Date, the Class Representatives and all Settlement Class Members shall be deemed to have waived any and all

protections, rights, and benefits of California Civil Code section 1542 and any comparable statutory or common-law provision of any other jurisdiction.

19.     As of the Effective Date, by operation of entry of this Judgment, the Released Persons shall be deemed to have fully released and forever discharged Plaintiffs, all other Settlement Class Members, and Class Counsel from any and all claims of abuse of process, malicious prosecution, or any other claims arising out of the initiation or prosecution of the Class Actions.

20.     Apple shall make payments on the terms and conditions specified in the Settlement Agreement. The payments called for in the Settlement Agreement are the only consideration, fees, and expenses Apple or the Released Persons shall be obligated to give to the Class Representatives, Settlement Class Members, and Class Counsel in connection with the Settlement Agreement and the resolution of these Class Actions.

21.     The Federal Actions and all claims asserted therein are settled and dismissed on the merits and with prejudice as to the Class Representatives and all Settlement Class Members.  Notwithstanding the foregoing, this Order, and the Final Judgment to be entered separately, do not dismiss any claims that have been or may be asserted in the future by any persons or entities who have validly and timely requested exclusion from the Settlement Class as provided for in ¶ 31 of the Settlement Agreement.  A list of persons and entities who validly and timely requested exclusion is on file with this Court.  Notwithstanding the dismissal of the Federal Actions, Apple shall not claim and may not be awarded any costs, attorneys' fees, or expenses.

22.     The Settlement Agreement, this Order, and the Final Judgment to be entered separately are not admissions of liability or fault by Apple or the Released Persons, or a finding of the validity of any claims in the Class Actions or of any wrongdoing or violation of law by Apple or the Released Persons.  The Settlement

Agreement and settlement are not a concession by the Parties, and to the extent permitted by law, neither the Settlement Agreement, nor this Order, nor the Final Judgment, nor any of their terms or provisions, nor any of the negotiations or proceedings connected with the settlement, shall be offered as evidence or received in evidence in any pending or future civil, criminal, or administrative action or proceeding to establish any liability of, or admission by Apple, the Released Persons, or any of them.   Notwithstanding the foregoing, the Court retains jurisdiction to enforce the terms of the Settlement Agreement, and nothing in this Order shall be interpreted to prohibit the use of the Final Judgment in a proceeding to consummate or enforce the Settlement Agreement or Final Judgment, or to defend against the assertion of Released Claims in any other proceeding, or as otherwise required by law.

23.   In the event that the settlement does not become final, in that an Effective Date is not reached as that term is defined in the Settlement Agreement, this Order shall be rendered null and void and shall be vacated, and the Parties shall be restored to their respective positions in the litigation as of the date on which the Settlement Agreement was executed.

24.   All other relief not expressly granted to the Settlement Class Members is denied.

25.   Without affecting the finality of this Order in any way, the Court reserves exclusive and continuing jurisdiction over the Federal Actions, Class Counsel, the Class Representatives, the Settlement Class Members, the Settlement Administrator, and Apple for purposes of supervising the implementation, enforcement, construction, and interpretation of the Settlement Agreement, this Order, the Court's Orders dated April 14 and April 17, 2014 regarding Setting Amount of Attorney's Fees, Costs, and Incentive Awards and the Final Judgment entered by the Court concurrently herewith.

1       IT IS SO ORDERED.

2

3  Dated:  May 8, 2014

                                  The Honorable Richard Seeborg
                                  UNITED STATES DISTRICT JUDGE

~~PROPOSED~~ ORDER GRANTING FINAL APPROVAL OF SETTLEMENT AGREEMENT, ETC.
(CASE NO. CV-10-01610)