1

2  Steven A. Schwartz (*pro hac vice*) (sas@chimicles.com)
Timothy N. Mathews (*pro hac vice*) (tnm@chimicles.com)
3  **CHIMICLES & TIKELLIS LLP**
361 W. Lancaster Avenue
4  Haverford, PA  19041
T: 610-642-8500
5  F: 610-649-3633

6  *Co-Lead Class Counsel*

7

8

9

10            **UNITED STATES DISTRICT COURT**

11            **NORTHERN DISTRICT OF CALIFORNIA**

12

13  IN RE: APPLE iPHONE/iPOD            )  No:10-CV-01610
WARRANTY LITIGATION                )
14                                     )  **NOTICE OF MOTION AND MOTION**
This Document Relates to All Actions  )  **BY PLAINTIFFS' CO-LEAD CLASS**
15                                     )  **COUNSEL CHIMICLES & TIKELLIS**
                                       )  **LLP FOR AN ORDER**
16                                     )  **AUTHORIZING DISTRIBUTION OF**
                                       )  **RESIDUAL SETTLEMENT FUND**
17                                     )
                                       )  Date:  June 25, 2015
18                                     )  Time:  1:30 p.m.
                                       )  Place: Courtroom 3
19                                     )  Judge: The Hon.  Richard Seeborg
                                       )
20  _____   )

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

NOTICE AND MOTION .................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................... 2

I.       INTRODUCTION ................................................................ 2

II.      CURRENT STATUS OF SETTLEMENT ADMINISTRATION ....................... 4

III.     ARGUMENT ..................................................................... 6

         A.       THE $4,591,261.35 BALANCE OF THE NET SETTLEMENT
                  FUND SHOULD BE DISTRIBUTED TO SETTLEMENT CLASS
                  MEMBERS AND APPLE MUST PAY ALL COSTS OF
                  ADMINISTRATION ...................................................... 6

                  1.       Relevant Provisions of the Settlement Agreement ...................... 6

                  2.       The Parties' Statements to the Court and the Class .................. 7

                  3.       The Court's Final Order ........................................ 8

                  4.       Applicable Legal Standards ...................................... 9

                  5.       The Settlement Agreement Requires Apple
                           to Pay for the Second Round Distribution ................... 12

IV.      CONCLUSION ................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Baby Products Antitrust Lit.,*
    708 F.3d 163 (3d. Cir. 2013) .................................................................. 10

*In re Bank of Am. Sec. Litig.,*
    775 F.3d 1060 (8th Cir. 2015)................................................................. 10

*Dennis v. Kellogg Co.,*
    697 F. 3d 858........................................................................................ 9

*Masters v. Wilhelmina Model Agency, Inc.,*
    473 F.3d 423 (2d Cir. 2007) ................................................................. 10

*Six Mexican Workers v. Arizona Citrus Growers,*
    904 F.2d 1301 (9th Cir. 1990)............................................................... 9


**STATUTES**

California Civil Code §§ 3287-89 ............................................................... 12

ii

1

## NOTICE AND MOTION

2 TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3    NOTICE IS HEREBY GIVEN THAT on June 25, 2015 at 1:30 p.m. or as

4 soon as this matter may be heard thereafter, before the Honorable Richard G.

5 Seeborg, United States District Judge, in Courtroom 3, 17th Floor of the United

6 States Courthouse, 450 Golden Gate Avenue, San Francisco, California, Plaintiffs'

7 Co-Lead Class Counsel Chimicles & Tikellis LLP will, and hereby do, move the

8 Court an order that the Settlement Administrator Kurtzman Carson Consultants

9 ("KCC") shall distribute the balance of the Net Settlement Fund to Settlement Class

10 Members who cashed their initial settlement distribution checks, and order Apple

11 to pay KCC for the costs of effecting such a secondary administration.

12    The motion is based on this notice, the memorandum of points and

13 authorities set forth below, the accompanying declaration of Patrick Passarella of

14 KCC, and all other papers and records in the Court's file, and such other and

15 further matters as may be presented at the hearing.

16

17          Respectfully submitted,

18 DATED: May 14, 2015   By:   */s/ Steven A. Schwartz*

19          Steven A. Schwartz (*pro hac vice*)
         Timothy N. Mathews (*pro hac vice*)

20          361 W. Lancaster Ave
         Haverford, PA 19041

21          T: 610-642-8500
         F: 610-649-3633

22

23          *Co-Lead Class Counsel*

24

25

26

27

28

NOTICE OF MOTION AND MOTION BY PLAINTIFFS' CO-LEAD CLASS COUNSEL CHIMICLES
& TIKELLIS LLP FOR AN ORDER AUTHORIZING DISTRIBUTION OF RESIDUAL
SETTLEMENT FUND

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs' Co-Lead Chimicles & Tikellis LLP ("Chimicles") submits the following Motion to advise the Court of the current status of the administration of the $53 million class Settlement in this action and for an Order (1) that the balance of the Net Settlement Fund (approximately $4,591,261.35 due to uncashed checks) should be distributed *pro rata* to Settlement Class Members who previously cashed a settlement check, and (2) that defendant Apple, Inc. ("Apple") is required to pay for the administrative costs of that distribution.[1]

Settlement checks totaling $39,735,329.40 were mailed to 165,283 Settlement Class members in October 2014.  The checks were for an average of $240.40 per class device, which represented a recovery of approximately 117% of the average replacement cost of each Settlement Class Member's iPhone or iPod touch. Despite the parties' best efforts to ensure that all check were cashed, approximately $4,591,261.35 in checks were not cashed and became void 120 days after mailing.

The parties have met and conferred in good faith but have been unable to agree on what should happen with the balance of the Net Settlement Fund resulting from these uncashed checks.  Co-Lead counsel Chimicles & Tikellis LLP believes that the remaining balance should be re-distributed *pro rata* to those Settlement Class members who have previously cashed checks, as well as to approximately 740 claimants who either submitted claims after the filing deadline

---

[1]    Chimicles also believes that a portion of the balance of the Net Settlement Fund should be used to pay approximately 740 claims that were either submitted after the filing deadline and/or had deficiencies cured after the cure deadline, but are otherwise complete and valid.  The approximate value of these late claims is $153,620.00.  Chimicles understands that Co-Lead Counsel Fazio/Micheletti LLP ("Fazio") and Apple agree that these tardy but otherwise validated claims should be paid.

NOTICE OF MOTION AND MOTION BY PLAINTIFFS' CO-LEAD CLASS COUNSEL CHIMICLES & TIKELLIS LLP FOR AN ORDER AUTHORIZING DISTRIBUTION OF RESIDUAL SETTLEMENT FUND

and/or had deficiencies cured after the cure deadline.  If the un-cashed check funds are distributed on a *pro-rata* basis to the Class Members who cashed their initial settlement award checks, the average additional check amount to those Class Members would be approximately $31.43, which is not an immaterial amount. *See* Fourth Supplemental Derclaration of Patrick Passarella (Passarella Decl.) (Ex. A hereto) at ¶ 14. The estimated costs of a second distribution to the class would be $150,000.00. *Id.* ¶ 15.

Chimicles understands that Co-Lead Counsel Fazio/Micheletti LLP ("Fazio") will propose that the full balance of the Net Settlement Fund should be distributed *cy pres* to the five organizations approved by the Court in the Final Order, which would result in each of the five *cy pres* recipients receiving approximately $918,252.27. *Id.* ¶ 13.

Chimicles also understands that defendant Apple will propose that the Settlement Administrator re-distribute the balance to those Settlement Class members who previously cashed checks provided, however, that the costs of that distribution process shall be paid from the balance of the Net Settlement Fund (and not by Apple) or, alternatively, that the balance should pass through escheat to the respective states where the non-cashing Settlement Class Members reside.[2]

---

[2]    In the September 25, 2014 Status Report of Co-Lead Class Counsel (Dkt. No. 162), Chimicles and Fazio advised the Court that:

> In early 2015, Co-Lead Class Counsel will provide the Court with an additional status report regarding the ongoing settlement administration process. To the extent there are settlement checks that remain uncashed checks after the Settlement Administrator completes its appropriate follow-up steps as required by the Settlement Agreement, Co-Lead Class Counsel, in consultation with the Settlement Administrator and defendant Apple, Inc., will submit a proposal regarding next steps with respect to distribution of the balance of the Net Settlement Fund consistent with the Settlement Agreement.

The parties began discussing their dispute the issue of how to distribute the balance of the Net Settlement Fund in January 2015, when the check cashing deadline expired.  Since the two Co-Leads and Apple could not agree on which of the three

3

For the reasons stated herein, Chimicles believes that re-distribution to the Settlement Class Members who previously cashed checks is the most appropriate outcome, and the Settlement Agreement and Final Order require Apple to bear these costs.[3]

## II.   <u>CURRENT STATUS OF SETTLEMENT ADMINISTRATION</u>

This Court's Order approving the $53 million Settlement (Dkt. No. 154) is final. On September 23, 2014, the Settlement Administrator mailed 165,283 settlement award checks totaling $39,735,329.40 to 137,286 Direct-Payment Settlement Class Members and 27,997 Claims-Made Settlement Class Members. *See* Fourth Supplemental Derclaration of Patrick Passarella ("Passarella Decl.") (Ex. A hereto) at ¶5. Consistent with the Court's Final Order (Dkt. No. 154 at 5, 9), the check amounts represented approximately 117% of the average replacement cost of each Settlement Class Member's iPhone or iPod touch.

Among other things, paragraph 38 of the Settlement Agreement (Dkt. No. 76-1) requires the Settlement Administrator to take "appropriate follow up steps" with respect to any Settlement Class Member who has not deposited his or her

---

potential outcomes was most appropriate, the parties agreed to submit a joint report to the Court setting forth their respective positions. On March 19, 2015, the Chimicles firm emailed to all counsel a draft joint report with their argument section largely in the format of this Memorandum, and requested that Fazio and Apple insert and circulate sections addressing their respective positions. To date, neither has done so and Fazio has been unable to commit to a time frame when it would be in a positon to do so. Apple has refused to provide any draft insert until Fazio provides one. Accordingly, in the interest of reaching a resolution so that the balance of the Net Settlement Fund can be distributed, all accounts closed, and this matter concluded, Chimicles notified all counsel that it would file the instant Motion.

[3]    To the extent there are any uncashed checks after such a second round distribution, the Chimicles firm believes any remaining funds should then be distributed *cy pres*, and under no circumstances is *escheat* appropriate.

NOTICE OF MOTION AND MOTION BY PLAINTIFFS' CO-LEAD CLASS COUNSEL CHIMICLES & TIKELLIS LLP FOR AN ORDER AUTHORIZING DISTRIBUTION OF RESIDUAL SETTLEMENT FUND

settlement check within 30 and 60 days of mailing. Accordingly, at the direction of the parties, the Settlement Administrator took various steps to maximize the check cashing rate, including: mailing over 44,000 reminder postcards to Settlement Class Members who had not cashed their settlement checks in October 2014 and over 25,000 secondary reminder postcards in November 2014 to those who had still not cashed (*id*. ¶ 7); updating the home page of the Settlement Website to indicate that settlement checks have been mailed to eligible class members in September 2014 (*id*. ¶ 6); and taking appropriate steps with respect to checks returned by the post office including reissuing over 5,000 checks to new addresses (*id*. ¶ 9). The checks, the cover letters sent with the checks, and also the follow-up reminder postcards sent to Settlement Class Members stated that the checks would become void if not cashed within 120 days.

As of May 11, 2015, a total of 146,049 settlement award checks have been cashed in the amount of $35,144,068.05. The cashed checks represent 118,852 Direct-Payment Settlement Class Members and 27,197 Claims-Made Settlement Class Members. Overall, 86.5% of Direct-Payment Settlement Class Members and 97% of Claims-Made Settlement Class Members cashed their settlement award checks. *Id*. ¶ 10. As of May 11, 2015, a total of 19,234 settlement award checks totaling $4,591,261.35 remain un-cashed. *Id*. ¶ 11.

To date, the Settlement Administrator has sent three separate mailings (the initial settlement award check distribution and two reminder postcards) to the Class Members who did not cash their settlement award checks. *Id*. ¶ 12. Given the relatively high check-cashing rate in this Settlement and the multiple follow-up attempts to those who did not cash their checks, and the repeated requests for Direct-Payment Settlement Class Members to confirm or update their mailing addresses, and based on its experience, the Settlement Administrator does not believe there are any additional follow-up steps that would materially increase the

NOTICE OF MOTION AND MOTION BY PLAINTIFFS' CO-LEAD CLASS COUNSEL CHIMICLES
& TIKELLIS LLP FOR AN ORDER AUTHORIZING DISTRIBUTION OF RESIDUAL
SETTLEMENT FUND

cash rate among Class Members who have not cashed their checks. *Id*. ¶ 12.  Thus, there is a balance of $4,591,261.35 in the Net Settlement Fund representing the amount of the checks that became void because they were uncashed.

## III.   ARGUMENT

### A.   THE $4,591,261.35 BALANCE OF THE NET SETTLEMENT FUND SHOULD BE DISTRIBUTED TO SETTLEMENT CLASS MEMBERS AND APPLE MUST PAY ALL COSTS OF ADMINISTRATION

The Chimicles firm, represented in this case by its partners Steve Schwartz and Timothy Mathews, believes that the remaining $4,591,261.35 should be distributed (1) to pay approximately 740 claims that were either submitted after the filing deadline and/or had deficiencies cured after the cure deadline, and (2) *pro rata* to the Class Members who cashed their initial settlement award checks.  Further, Apple is required under the terms of the Settlement to pay the administrative costs of such a second round distribution.  The Chimicles firm believes that its position is consistent with the terms of the Settlement Agreement, the parties' representations to the Court and Class Members, the Court's Final Approval Order, and applicable legal standards.

#### 1.   Relevant Provisions of the Settlement Agreement

Paragraph 18 of the settlement agreement provides: "The Net Settlement Fund shall [] be distributed to Settlement Class Members in accordance with the plan of allocation described in ¶ 33 below. To the extent there is a balance remaining in the Net Settlement Fund after the parties use their **best efforts to fully compensate Settlement Class Members**, such balance shall be equally distributed *cy pres* at the conclusion of the claims administration process…" The allocation provisions of paragraph 33 provide that each eligible Settlement Class Member "will receive a proportionate share of the Net Settlement Fund" with the only limitation that "no Settlement Class Member will receive a payment for **more**

NOTICE OF MOTION AND MOTION BY PLAINTIFFS' CO-LEAD CLASS COUNSEL CHIMICLES & TIKELLIS LLP FOR AN ORDER AUTHORIZING DISTRIBUTION OF RESIDUAL SETTLEMENT FUND

1   **than 200%** of the amount shown below for their device type and configuration."[4]

2   The Class Notice states: "In addition to the $53 million Settlement Fund, Apple will

3   pay the costs of distributing Class Notice and administering claims. So the **Net**

4   **Settlement Fund** will not be reduced by notice and administration costs." Dkt. No.

5   76-1 at page 7 Question 10 (emphasis in original).

6      The Settlement Class Members who cashed their checks have received 117%

7   of their average replacement cost of their devices, which is less than the 200% cap

8   provided by paragraph 33 of the Settlement Agreement.  A second round

9   distribution will increase that recovery to 133%, which also falls below the 200%

10  cap.

11                  **2.      The Parties' Statements to the Court and the Class**

12      Consistent with the terms of the Settlement Agreement, the parties

13  informed the Court and the Class (via posting on the Settlement Website) that, due

14  to the success in identifying and validating Class Members for payment and the

15  potential of a second round distribution, they expected any residual balance

16  available for *cy pres* distribution would be minimal. *See, e.g.* Plaintiffs Final

17  Approval Brief (Dkt. No. 97) at 2 ("If any portion of the Settlement Fund remains

18  after all of the distributions required by the Settlement Agreement **and/or further**

19  **distributions are impractical**, there will not be any reversion to Apple. Instead,

20  those funds will first be used to pay Settlement Class Members up to 200% of the

21  average replacement cost for their particular Class Device"); Apple Final Approval

22  Brief (Dkt. No. 96) at 2 (While the settlement provides for *cy pres*…if not all Net

23  Settlement Funds are required to compensate Class Members, it is virtually certain

24  that all Net Settlement Funds will be distributed to Class Members.  **No part of**

25

26  [4]     Unless otherwise stated, all boldface in quoted text represents emphasis that

27  has been added.

28
                                          7

1  **the Settlement Fund will go to costs of notice or claims administration,**

2  **which are being separately paid by Apple**"); *id.* at 18 ("While the settlement

3  provides for *cy pres* distribution to approved non-profit organizations if the

4  Settlement Fund is not exhausted, any such distribution is highly unlikely given

5  the number of claims already validated"); Plaintiffs' Brief in Response to Objections

6  (Dkt. No. 141) at 7 ("Given the number of verified payments to Settlement Class

7  members, it is probable that distributions to *cy pres* recipients, if any, will be

8  minimal."); Apple's Brief in Response to Objections (Dkt. No. 138) at 8-9 ("Based on

9  the number of Direct-Payment Settlement Class Members and Claims-Made

10  Settlement Class Members with currently validated claims, it is virtually certain

11  that all Net Settlement Funds will be distributed to Class Members, and none will

12  be distributed *cy pres*.").

13        **3.**      **The Court's Final Order**

14        Paragraph 4(D) this Court's Final Order provides at pages 6 – 7 that any *cy*

15  *pres* distribution "is likely to be small given the large number of validated claims."

16  In overruling objections related to *cy pres* provisions of the settlement, the Court

17  stated at paragraph 11:

18          Because the amount of approved payments to Direct-Payment and
        approved Claim-Made Settlement Class Members is sufficient to

19          exhaust the Net Settlement Fund, any potential *cy pres* distribution

20          will be limited to any residual as a result of checks issued to
        Settlement Class Members that are not cashed. To the extent there are

21          any uncashed checks, the Settlement Administrator is required to take
        appropriate follow-up steps with the recipients of uncashed checks in

22          an effort to maximize the number of checks that are cashed. (*Id.* ¶ 38.)

23          Any *cy pres* distributions will be limited to the dollar amount of checks
        that remain uncashed notwithstanding these efforts and any

24          additional "best efforts" by the parties "to fully compensate class
        members." (*Id.* ¶ 18.) Because the Settlement Agreement also provides

25          that Settlement Class Members are eligible to receive up to 200% of

26          the average replacement costs of their Class Devices listed in the
        Settlement Agreement, (*Id.* ¶ 33, **those "best efforts" might**

27          **include redistribution of unclaimed funds to other Class**

28  

NOTICE OF MOTION AND MOTION BY PLAINTIFFS' CO-LEAD CLASS COUNSEL CHIMICLES
& TIKELLIS LLP FOR AN ORDER AUTHORIZING DISTRIBUTION OF RESIDUAL
SETTLEMENT FUND

**Members where appropriate and specifically approved by the Court**. *See Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990) ("Federal courts have broad discretionary powers in shaping equitable decrees for distributing unclaimed class action funds.").

### 4.    Applicable Legal Standards

As reflected above, the Ninth Circuit in *Six Mexican Workers* provides this Court with the discretion to use its equitable powers to distribute unclaimed funds to class members. The use of equitable principles is not necessary, however, to order a second round distribution. As set forth above, a straightforward application of the Settlement Agreement's "best efforts" requirement to achieve "full compensation" subject only to a "200%" cap dictates a second round distribution given the large size of the current balance of the Net Settlement Fund.  Indeed, the original distributions to Class Members would have been larger had those who ultimately did not cash checks (including Direct Payment Settlement Class Members who did not confirm or update their addresses) been excluded from the distribution.

Even if the Settlement Agreement were not so clear, principles applicable to *cy pres* distribution of class action residuals supports a second round distribution here. The term "*cy pres*" is derived from the Norman French expression *cy pres comme possible*, which means "as near as possible." The *cy pres* doctrine originated as a rule of construction to save a testamentary charitable gift that would otherwise fail, allowing the next best use of the funds to satisfy the testator's intent as near as possible.  *See Dennis v. Kellogg Co.,* 697 F. 3d 858. 865 (9th Cir. 2012). "To ensure that the settlement retains some connection to the plaintiff class and the underlying claims, however, a *cy pres* award must qualify as 'the next best distribution' to giving the funds directly to class members. *Id.  See also In re Bank of Am. Sec. Litig.*, 775 F.3d 1060, 1063 n.2 (8th Cir. 2015).

1    "Because the settlement funds are the property of the class, a *cy pres*

2    distribution to a third party of unclaimed settlement funds is permissible '*only*

3    when it is not feasible to make further distributions to class members'. . . . except

4    where an additional distribution would provide a windfall to class members with

5    *liquidated*-damages claims that were 100 percent satisfied by the initial

6    distribution.'" *Id*. at 1064, quoting *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468,

7    475 (5th Cir. 2011).  Following ALI principles,[5] in assessing whether a class

8    member has been "fully compensated," the court held that it is appropriate to not

9    just consider compensatory damages but also additional elements of damages. *Id*. at

10   1065-66, citing *Klier*, 658 F.3d at 479 and *Masters v. Wilhelmina Model Agency,*

11   *Inc.*, 473 F.3d 423, 434-35 (2d Cir. 2007) (district court in ordering *cy pres*

12   distribution failed to consider that full restitution to antitrust plaintiffs includes

13   treble damages). Accordingly, the Eight Circuit ordered a **third** round distribution

14   of a $2.7 million residual (limited to class members who had cashed their checks in

15   prior distributions) even though such a third distribution was contrary to the terms

16   of the settlement agreement. *See In re Bank of Am. Sec. Litig.*, 775 F.3d at 1066 &

17   n.5; *see also* page 1065 and note 4. *See also In re Baby Products Antitrust Lit.*, 708

18   F.3d 163, 172-73 (3d. Cir. 2013) ("We caution, however, that direct distributions to

19   the class are preferred over *cy pres* distributions."), citing *Mirfasihi v. Fleet Mortg.*

20   *Corp.*, 356 F.3d 781, 784–85 (7th Cir. 2004).

---

22   [5]    The American Law Institute addressed the issue of *Cy Pres* Settlements in §
23   3.07 of its published Principles of the Law of Aggregate Litigation (2010). The ALI
     recommended:
24          (b) If the settlement involves individual distributions to class members
            and funds remain after distributions (because some class members
25          could not be identified or chose not to participate), the settlement
            should presumptively provide for further distributions to participating
26          class members unless the amounts involved are too small to make
            individual distributions economically viable or other specific reasons
27          exist that would make such further distributions impossible or unfair.

28
NOTICE OF MOTION AND MOTION BY PLAINTIFFS' CO-LEAD CLASS COUNSEL CHIMICLES
& TIKELLIS LLP FOR AN ORDER AUTHORIZING DISTRIBUTION OF RESIDUAL
SETTLEMENT FUND

1       Given the nearly $4.6 million residual, an additional distribution is

2   economically feasible. Class Members would receive a check for an additional $31.43

3   on average. Because a second round distribution would be limited to class members

4   who previously cashed their first-round checks, the costs associated with sending

5   the additional checks do not include identifying and locating eligible class members

6   and therefore is limited to only about $1 per check.

7       Moreover, the fact that Settlement Class Members who cashed checks

8   already received 117% of the average replacement cost of their iPhones and iPod

9   touches does not mean they received "full compensation" such that receiving an

10  additional check that brings their recovery up to 133% would constitute an

11  impermissible windfall. The Settlement Agreement provided for a payment of up to

12  200%. That provision was approved by the Court and did not elicit any objections.

13      The claims for damages asserted by Plaintiffs in this Action were not strictly

14  limited to recovering the average replacement cost of their devices.  For example, in

15  addition to seeking to recover the cost of replacement devices, Plaintiffs' complaint

16  sought to compel "Apple to extend warranty coverage" and to make "restitution of all

17  moneys wrongfully obtained from [Apple's] violations of the UCL," as well as

18  seeking "restitution of the amounts by which [Apple] has been unjustly enriched by,

19  *inter alia*, (a) its sale of Class Devices at inflated prices due to the ostensible

20  inclusion of a one-year Standard Warranty, (b) the sale of an Extended Warranty;

21  … and (f) requiring consumers to relinquish to Apple their Class Device without

22  compensation…." *See* Master Complaint (Dkt. No. 53), Prayer for Relief at ¶¶ 12-

23  13.  Further, in paragraph 67 of their Master Complaint, plaintiffs sought a

24  national class based on nationwide application of California law to all claims, and

25  paragraph 63 of the Settlement Agreement provides that the agreement shall be

26  construed in accordance with and governed by California law. California law

27  provides for 10% prejudgment interest on the unliquidated contract damages such

28

NOTICE OF MOTION AND MOTION BY PLAINTIFFS' CO-LEAD CLASS COUNSEL CHIMICLES
& TIKELLIS LLP FOR AN ORDER AUTHORIZING DISTRIBUTION OF RESIDUAL
SETTLEMENT FUND

1    as the breach of warranty claims that were the central focus of this case, and

2    prejudgment interest can be awarded even for non-contractual claims. *See*

3    California Civil Code §§ 3287-89. While payments of 117% and 133% of average

4    replacement cost are both extraordinary recoveries for a class action, those

5    payments are still less than if Settlement Class Members had received payment of

6    the full amount of prejudgment interest as well. Finally, because the plan of

7    allocation agreed to by the parties and approved by the Court was based on *average*

8    replacement costs, some Settlement Class Members likely received less than the

9    amount they actually paid Apple for replacement devices and some may have

10   purchased another manufacturer's device altogether.   In summary, the fact that

11   Settlement Class Members who cashed their checks have received 117% of the

12   average replacement cost of their iPhones and iPod touch devices does not

13   necessarily mean they received "full compensation" as contemplated by the

14   Settlement, which allows for Settlement Class members to receive up to 200% of the

15   average replacement cost.  Chimicles respectfully submits that, consistent with the

16   terms of the Settlement Agreement requiring the Parties to use their "best efforts to

17   fully compensate Settlement Class Members," the remaining balance should be re-

18   distributed to the Settlement Class Members who previously cashed a check.[6]

### 5.   The Settlement Agreement Requires Apple to Pay for the Second Round Distribution

19

20

21        Paragraph 21 of the Settlement Agreement provides:  "Separate from and in

22   addition to the $5,300,000 million to be deposited as the Settlement Fund, Apple

23   shall pay **all** costs of notice and costs of administration of the Settlement

24   _____

25   [6]     The Chimicles firm believes that the five *cy pres* organizations recommended
     by the parties and approved by the Court are each worthy recipients of an award
26   from a residual balance from the Settlement Fund, but for the reasons stated herein
     there must a secondary distribution before any *cy pres* distribution.
27

28                                           12

Agreement as set forth in sections VI and VII below, including preparation and distribution of class notice…, and taking the steps necessary to process, administer, and audit claims and make payments to qualified Settlement Class Members." Paragraph 18 of the Settlement Agreement requires "the parties use their best **efforts to fully compensate** Settlement Class Members" in connection with the notice and settlement administration process. At page 2 of its Memorandum in Support of Final Settlement Approval (Dkt. No. 96), Apple represented: "**No part of the Settlement Fund will go to costs of notice claims administration**, which are being separately paid by Apple." At page 18 of the brief, Apple reiterated: "The $53 million non-reversionary fund is undiminished by any costs of administration, **all of which are borne by Apple**." At pages 7-8 of that brief, Apple further represented:  "Class Members **will receive** up to 200 percent of average replacement cost, depending on the number of validated claims."  And Apple submitted a proposed final order, which included the following language approved and entered by the Court: "those 'best efforts' [to fully compensate Settlement Class Members] might include redistribution of unclaimed funds to other Class Members where appropriate and specifically approved by the Court."[7]  Accordingly, Apple is obligated under the Settlement Agreement to pay for those best efforts to pay up to 200% of average replacement cost. The Settlement Agreement contemplated the

---

[7]     *See also* Final Approval Order at page 26 ("Pursuant to paragraphs 18 and 21 of the Settlement Agreement (Dkt. No. 76-1), Apple is separately paying all costs of notice and settlement administration in addition to the $53 million Apple is required to pay into the Settlement Fund."); at page 7 ("The $53 million nonreversionary fund is also undiminished by any costs of Class Notice and the administration of the claims process, all of which are borne by Apple"); and at page 10 ("The Settlement consists of a $53 million non-reversionary Settlement Fund and Apple's agreement to bear separately the expense of settlement administration, including all notice and claims-administration costs.").

NOTICE OF MOTION AND MOTION BY PLAINTIFFS' CO-LEAD CLASS COUNSEL CHIMICLES & TIKELLIS LLP FOR AN ORDER AUTHORIZING DISTRIBUTION OF RESIDUAL SETTLEMENT FUND

1   possibility if not likelihood of a second round distribution, as did the proposed final

2   approval order jointly drafted and submitted to the Court by Apple. All of the

3   representations to this Court-- and to class members via posting on the Settlement

4   Website-- unconditionally represented that Apple would pay such settlement

5   administration costs. Prior to March 2015, Apple never disclosed or even hinted

6   that it would not pay for such settlement administration costs. Accordingly, this

7   Court should enforce the terms of the Settlement Agreement and its Final Approval

8   Order and hold Apple to its word and require Apple to pay the Settlement

9   Administrator for all reasonable costs of a second round distribution. Otherwise the

10  statement in the Class Notice that "the **Net Settlement Fund** will not be reduced

11  by notice and administration costs" would not be true.

12  **IV.   CONCLUSION**

13        This Court should order the Settlement Administrator KCC to distribute the

14  balance of the Net Settlement Fund to Settlement Class Members who cashed their

15  initial settlement distribution checks, and order Apple to pay KCC for the costs of

16  effecting such a secondary administration.

17  DATED:  May 14, 2015    By:       */s/ Steven A. Schwartz*

18                      Steven A. Schwartz (*pro hac vice*)
    Timothy N. Mathews (*pro hac vice*)

19                      CHIMICLES & TIKELLIS LLP
    361 W. Lancaster Avenue

20                      Haverford, PA  19041
    Telephone:  610-642-8500

21                      Facsimile:  610- 649-3633

22                      *Co-Lead Class Counsel*

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION BY PLAINTIFFS' CO-LEAD CLASS COUNSEL CHIMICLES
& TIKELLIS LLP FOR AN ORDER AUTHORIZING DISTRIBUTION OF RESIDUAL
SETTLEMENT FUND