IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE APPLE IPHONE/IPOD WARRANTY LITIGATION | No. C 10-1610 RS<br><br>**ORDER RE DISPOSITION OF FUNDS FROM UNCASHED CHECKS** |
| _____/ | |

In an outcome that all parties agree was wholly unanticipated and that is not unambiguously addressed by the settlement agreement in this action, approximately 4.6 million dollars' worth of settlement distribution checks that were mailed out to specifically identified class members have gone uncashed and have now expired. As average payments were approximately $240 per class device, each of the uncashed checks was for a non-trivial sum of money.

Plaintiffs' co-lead counsel Chimicles & Tikellis LLP ("Chimicles") proposes distributing the funds from the uncashed checks through a second distribution to those class members who did negotiate their checks, with the costs of such further distribution to be borne by defendant Apple. Co-lead plaintiffs' counsel Fazio|Micheletti LLP ("Fazio") proposes instead distributing the funds to the *cy pres* recipients designated in the settlement agreement. Apple argues that the best way to

protect the interests of the uncompensated class members is through "custodial escheat"—delivery of the funds from each uncashed check to the state government of the last known address of the named payee, to be held in trust for the payee's benefit under state unclaimed property laws.

A further distribution to those class members who previously cashed checks is an unsatisfactory option. While an argument can be made that many or all of them may not have been made completely whole by the prior payments, the agreement here unarguably provided compensation that was fair in the settlement context. Giving those individuals more money, while providing no further benefit to the balance of the class, does not serve the interests of justice.

Payment to *cy pres* beneficiaries, of course, does represent an attempt to provide a benefit to the class as a whole, including particularly members who have not received direct compensation. *See Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) ("a *cy pres* award must qualify as 'the next best distribution' to giving the funds directly to class members."). This is not, however, a situation where class members could not be identified or where each payout would be too small to make direct payments economically feasible. Nor is the total amount at stake some relatively small sum, representing only a few undeliverable or uncashed checks. Distribution to the *cy pres* recipients of nearly $4.6 million would be completely contrary to what was represented at the time the settlement was approved.

"Custodial escheat," as Apple calls it, most nearly serves the goal of providing direct compensation to the class members. Although the term "escheat" is still used, modern unclaimed property statutes typically provide for the state to hold property in trust for its owners indefinitely, except in certain circumstances. *See*, *e.g.*, *Taylor v. Westly*, 402 F.3d 924, 930 (9th Cir. 2005) (explaining distinction in California Unclaimed Property Law between "escheat" and "permanent escheat"). Thus, depositing the funds from the uncashed checks into the unclaimed property funds of the relevant states should permit the affected class members—or even their heirs or beneficiaries—to recover the monies at any time in the future. Admittedly, as the *Taylor* line of cases[1] reflects, it may be the case that monies deposited into a state's unclaimed property system often go unclaimed. Nevertheless, proceeding in such a fashion means that at least some of the

---

[1] *See Taylor v. Yee*, 780 F.3d 928, 931 n. 1 (9th Cir. 2015) for a listing of the cases.

relevant class members likely will receive direct cash distributions, and all of them will have the continued opportunity to do so. Neither a redistribution to other class members nor a payout to the *cy pres* beneficiaries carries even the possibility of such direct benefits.

Fazio argues that putting the funds into state unclaimed property systems would be improper. It insists unclaimed property/escheat law is effectively inapplicable because, it contends, the "residual settlement fund" is not the property of the class. Fazio relies on language from *Wilson v. Sw. Airlines, Inc.*, 880 F.2d 807, 811-12 (5th Cir. 1989) that "all class members who presented their claims received the full payment due them, and those who did not present claims have waived their legal right to do so." *Wilson*, however, did not involve checks that had been sent out to identified class members and then not cashed. Rather, it involved a true "residual fund" of monies that had never been designated as belonging to specific individual class members. Additionally, the settlement agreement here did not require class members affirmatively to present claims to be entitled to payment. The language in *Wilson* does not support a conclusion that persons to whom settlement checks were actually issued have no remaining interest in those funds merely because the checks have expired.

Fazio also argues that the California Supreme Court expressly rejected escheat as an appropriate method for disposing of residual settlement funds in *State of California v. Levi Strauss & Co.*, 41 Cal. 3d 460, 475 (1986) and that a preference for *cy pres* as the last resort has been codified at Cal. Code Civ. Proc. § 384. *Levi Strauss*, however, explicitly was addressing "general escheat" where the funds are deposited into the "general fund of a governmental body" with the "benefits of the recovery . . . spread among all taxpayers, [and] no attempt to ensure that the spillover is used to effectuate the purposes of the substantive law." 41 Cal. 3d at 475. While the advantage of directing true residual funds to specifically selected *cy pres* recipients over "general escheat" to the state treasury is obvious, it is not implicated here. These funds, already identified as belonging to specific class members, will go into "custodial escheat" and be held in trust for those persons. For the same reason, § 384 does not call for a different result.

Accordingly, it appears that the most appropriate disposition of the approximately $4.6 million dollars in uncashed checks is for the administrator to turn over those funds, identified by

class member name and amount, to the designated officials in each of the relevant states, to be held in trust for the payees pursuant to the unclaimed property laws in those states. Some uncertainty remains, however, because the parties have not addressed whether the laws in any of the affected states might present a barrier to proceeding in this manner.[2]  For example, it might be the case that state officials would take the position that the administrator may not turn over the funds until the expiration of some statutory period, and the parties or administrator would object to leaving some portion of this matter still pending until then.  Or, in the seemingly unlikely event that some affected state has no statutory provisions for custodial escheat, allowing the funds to become the property of the state itself would be contrary to the goal of leaving eventual direct compensation to the class members open as a possibility.

Therefore, it is hereby ordered that within the next 60 days the parties investigate and determine whether the funds representing the uncashed checks may be turned over to the authorities in the relevant states in custodial escheat, in a manner that is consistent with the intent of this order. In the event no barriers appear, the administrator is hereby authorized and directed to turn over the funds to the appropriate state authorities.  If any issues arise that the parties are unable to resolve among themselves, they may submit a further *joint* brief succinctly setting out the issues and their respective positions, and any proposed resolutions.

IT IS SO ORDERED.

Dated: June 25, 2015

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

---

[2]  In a slightly different context, the parties have briefly addressed Texas law. *In Highland Homes Ltd. v. State*, 448 S.W.3d 403, 405 (Tex. 2014), the Texas Supreme Court rejected an argument that parties could not validly provide in their agreement for any settlement fund residue—including monies from checks not cashed within ninety days—to be distributed to a *cy pres* recipient.  The court concluded that Texas unclaimed property law did not prevent the plaintiffs from waiving class member's rights to payment if they did not cash their checks within the specified period. Nothing in the decision, however, would appear to preclude the Texas authorities from accepting funds in custodial escheat where, as here, the parties did *not* expressly provide for waiver of the plaintiffs' claims to the funds in the event the checks were not cashed.